120

DECIDED FEBRUARY 15, 1930.

*Bryan & Middlebrooks, W. Colquitt Carter, John R. Wilson,* for plaintiff in error.

*W. D. Custer & Son,* contra.

JENKINS, P. J. ■ In a suit for personal injuries, where it was made to appear to the court, on private inquiry conducted out of the hearing of the jury, that the defendant was protected by liability insurance, and that the insurance carrier was thus pecuniarily interested in the result of the suit, and no proof was submitted on behalf of either party to show whether an employee or a stockholder or relative of a stockholder of the insurance carrier was on the jury, it can not be said as a matter of law that a request of the plaintiff to purge the jury with reference to the insurance carrier was submitted in bad faith and solely for the purpose of informing the jury that the defendant was protected by liability insurance. Nor can it be said that it was an abuse of discretion so to purge the jury. *Bibb Manufacturing Co.* v. *Williams,* 36 *Ga. App.* 605, 607 (137 S. E. 636).

■ Under the decision of the Supreme Court in *Curtis* v. *Ash-*

*worth,* 165 *Ga.* 782 (142 S. E. 111), a husband is not liable, in Georgia, for the torts of his wife, except as such liability may arise by reason of the commission of the act "by his command, or in the prosecution and within the scope of his business." Accordingly, in a suit against a married woman for a tort, whether the husband would or would not be liable, under the doctrine of respondeat superior, it is not necessary that the husband be joined as a defendant in the action. *Miller* v. *Straus,* 38 *Ga. App.* 781 (2) (145 S. E. 501).

■ Whether or not an unemancipated minor child living with her parents and dependent upon them for support is prevented, on grounds of public policy, from suing one of them for a tort committed upon her person, there is no legal obligation resting upon parents to support a child after it reaches its majority; nor is there any legal obligation resting upon a child, after reaching majority, to remain in the home of the parents and perform, in return for the care and attention given by them, the duties usually performed by a child who is unemancipated. Consequently, in legal contemplation, the child who continues to live in the home after arriving at majority occupies the same status as any other guest, and there is nothing in the policy of the law which forms a legal obstacle to a suit by the child against a parent for a tort.

■ What constitutes negligence on the part of a defendant, what constitutes the proximate cause of an injury, and what amounts to a failure to exercise ordinary care on the part of a plaintiff, are generally questions for the jury. *Mayor &c. of Americus* v. *Johnson,* 2 *Ga. App.* 378, 380 (58 S. E. 518); *Holliday* v. *Mayor &c. of Athens,* 10 *Ga. App.* 709, 715 (74 S. E. 67); *Heath* v. *L. & N. Railroad Co.,* 39 *Ga. App.* 619, 620 (147 S. E. 793). Accordingly, where, as in the instant case, the plaintiff sued for injuries alleged to have been received when an automobile in which she was riding as the invited guest of another ran into the rear of the automobile of the defendant, which had been stopped in the road over which the plaintiff was, with the knowledge of the defendant, traveling, it was for the jury to determine, under proper instructions from the court, whether the alleged negligence of the defendant in stopping her car in a dense fog, without giving warning to the plaintiff or the driver of the car in which she was following, was the proximate cause of the injury,

or whether the injury proximately resulted from any negligence on the part of the driver of the car in which plaintiff was riding, and whether the plaintiff could, by the exercise of ordinary care on her own part, have avoided the consequences of defendant's negligence. This court, therefore, would not be authorized to say that a verdict for the defendant was demanded by the evidence.

■ "Except where a particular act is declared to be negligence, either by statute or by a valid municipal ordinance, the question as to what acts do or do not constitute negligence is for determination by the jury, and it is error for the presiding judge to instruct them what ordinary care requires should be done in a particular case." *Atlanta & West Point Railroad* v. *Hudson,* 123 *Ga.* 108 (51 S. E. 29); *Augusta Ry. & Elec. Co.* v. *Weekly,* 124 *Ga.* 384 (52 S. E. 444); *Savannah &c. Ry. Co.* v. *Evans,* 115 *Ga.* 315 (41 S. E. 631, 90 Am. St. R. 116); *Portner Brewing Co.* v. *Cooper,* 116 *Ga.* 171 (42 S. E. 408); *Central of Ga. Ry. Co.* v. *McKinney,* 118 *Ga.* 535 (2) (45 S. E. 430); *Killian* v. *Augusta & Knoxville R. Co.,* 79 *Ga.* 234 (11) (4 S. E. 165, 11 Am. St. 410); *Mayor &c. of Milledgeville* v. *Wood,* 114 *Ga.* 370 (40 S. E. 239); *Atlanta &c. Ry. Co.* v. *McManus,* 1 *Ga. App.* 302 (9) (58 S. E. 258); *Augusta Ry. & Elec. Co.* v. *Lyle,* 4 *Ga. App.* 113 (60 S. E. 1075); *Southern Ry. Co.* v. *Freeman,* 6 *Ga. App.* 55 (2) (64 S. E. 129). While the statutes provide the manner and method of one vehicle passing another on meeting and on overtaking it, and even though such statutory regulations have been construed as governing the method of parking a motor-vehicle relative to another vehicle approaching it from the front and on the same side of the road (*Roberts* v. *Phillips,* 35 *Ga. App.* 743, 134 S. E. 837), the statutes contain nothing that requires the driver of an automobile stopped on the highway to put out a guard to give notice of his presence to drivers of cars approaching from the rear. Accordingly, the charge of the court that if the jury should find that "the damage brought about was sustained by her by reason of the neglect of the defendant, Mrs. Farrar, in directing her agent to stop on the wrong side of the road, not to put out a guard to notify approaching cars from the rear, give them notice of her presence there, that the Cummings car was allowed to come along and run into her without the necessary warning," they ought to find in favor of the plaintiff, was subject to the criticism that it instructed the jury, in effect, that both the

act of stopping the car, so as not to afford the vehicle overtaking it a fair opportunity to pass, and the failure to put out a guard to warn approaching vehicles of the presence of the defendant's car, if done by the defendant, constituted negligence on her part. The evidence was in conflict as to whether the car of the defendant was, at the time of the accident, so standing on the highway as to afford the vehicle approaching it from the rear a fair opportunity to pass, and the charge given had the effect of instructing the jury that even if they should believe the defendant had so stopped or parked her car, a failure to "put out a guard to notify approaching cars from the rear, give them notice of her presence there," would constitute negligence. The same criticism applies to the charge of the court that "should you find from the evidence that the plaintiff, Margaret Farrar, was riding along this road, as she contends, with Cummings, and that she was traveling at such rate as to have her car, or the driver of the car in which she was riding, that her car could be easily brought to a stop if necessary, and that without any warning or any notice to her, the car of Mrs. Farrar had been stopped on the wrong side of the road, the car in which the defendant was traveling had not been parked as required by law, and that no signal had been given to the approaching Cummings car in [which] the plaintiff was riding, and that the plaintiff was exercising such care and diligence as imposed upon her by the law to prevent accident, but that an accident was sustained, and that by reason of such accident the plaintiff had sustained the damages allowed in her petition, and that such accident could not have [been] prevented by use of ordinary care and diligence on the part of the plaintiff, you ought to find in her favor." For the reasons set forth in this division of the decision, and since the verdict in favor of the plaintiff, though authorized, was not demanded, the judgment in her favor must necessarily be set aside and a new trial granted.

■ Since the judgment must be reversed for the reasons set forth above, and since the other exceptions relate to matters such as are not likely to occur on a second trial, it is not necessary to deal with the remaining assignments of error.

*Judgment reversed. Stephens and Bell, JJ., concur.*