33808. WRIGHT *v.* WRIGHT.
33809. WRIGHT, by next friend, *v.* WRIGHT.

Decided March 7, 1952—Rehearing denied March 20, 1952.

722

*Harris, Chance & McCracken, Thurmond, Lybrand & Simons,* for plaintiff.

*Fulcher & Fulcher,* for defendant.

TOWNSEND, J. (After stating the foregoing facts.) ■ Able counsel for the plaintiff in error—while recognizing the fundamental concept that at common law husband and wife were considered as one person, for which reason neither could bring a civil action against the other (See *Heyman* v. *Heyman*, 19 *Ga. App.* 634, 92 S. E. 25; *Carmichael* v. *Carmichael*, 53 *Ga. App.* 663, 187 S. E. 116; *Central of Ga. Ry. Co.* v. *Cheney*, 20 *Ga. App.* 393, 93 S. E. 42); and further recognizing that the law is settled in this State that one spouse cannot sue the other for injury resulting from simple negligence, and while further conceding that the weight of authority in this country would bar a suit of this type—nevertheless urge that the better rule, as illustrated by Fiedler *v.* Fiedler, 42 Okla. 124 (140 Pac. 1022, 52 L. R. A. (N.S.) 189), Crowell *v.* Crowell, 181 N. C. 66 (106 S. E. 149), Johnson *v.* Johnson, 201 Ala. 41 (77 So. 335, 6 A. L. R. 1031) and other cases, is to the effect that a denial of recovery for a wilful and malicious tort should not be predicated on grounds of public policy, since such acts, by their very nature, end in disruption of the home and frequently in criminal prosecution, and since the changed status of modern woman renders archaic the legal anomaly which extends redress by way of the criminal and divorce courts, but denies it to her in a civil action. It is readily apparent that there may be merit in this contention. Nevertheless, our Code, § 53-501, specifically recognizes the principle of the common law that the civil existence of the wife is merged in that of her husband, except so far as the law chooses to recognize her separately. Our legislature has never created a right of action in one spouse for personal injury wilfully inflicted by the other, any more than a right of action for personal injury negligently inflicted, and there is no basis in the common law from which such distinction might be drawn. Our Supreme Court in *Eddleman* v. *Eddleman*, 183 *Ga.* 766 (189 S. E. 833, 109 A. L. R. 879), quoted with approval the case of Strom *v.* Strom, 98 Minn. 427 (107 N. W. 1047, 6 L. R. A. (N.S.) 191, 116 Am. St. R. 387), in which it was held that a wife could not bring a civil action against her husband for injuries resulting from assault and battery, holding in conclusion: "We prefer the rule of the Strom case, and think it should be adhered to until such time as the legislature shall deem it wise and prudent to

open up a field for marring or disturbing the tranquillity of family relations, heretofore withheld as to actions of this kind." Nor will an action for malicious prosecution lie, as between husband and wife. *Holman* v. *Holman,* 73 *Ga. App.* 205 (35 S. E. 2d, 923).

We therefore hold that there is not, in this State, any right of action in one spouse against another for a personal tort not involving any property right; and that this is true regardless of the fact that the tort is wantonly and maliciously inflicted. The trial court did not err in sustaining the general demurrer as to case No. 33808.

■ As to the question involved in case No. 33809, whether an unemancipated minor child may sue its parent under like conditions, the situation is somewhat different. The text quotation found in *Chastain* v. *Chastain,* 50 *Ga. App.* 241 (1) (177 S. E. 828)—that " 'A minor child has no civil remedy against its parents, or either of them, or those standing in loco parentis, for cruel and abusive treatment or for injuries resulting from negligence' "—is not only obiter as to any right of action founded upon a wilful and malicious act, but is, perhaps, the result of textbook misconception. This problem was discussed in Dunlap *v.* Dunlap, 84 N. H. 352 (150 Atl. 905, 71 A. L. R. 1055), as follows: "The English text writers of the 19th century appear to have been unanimous in the opinion that a child might have a cause of action for an assault committed by the father. In the works of these authors it is assumed or unequivocally declared that a malicious injury done to one standing in that relation is an assault. 2 Addison, Torts, (4th ed.) 727; Clerk & Lindsall, Torts, (8th ed.) 199; Pollock, Torts (12th ed.) 128. The text of the early editions has not been altered. It is suggested that none of them state that the child can sue the father, and the inference is sought to be drawn that the statements refer to criminal liability only. But when it is recalled that each author was writing about civil liability only, it is manifest that the view expressed relates to that subject. As to another English author, there is no possible doubt as to the meaning. 'If the father is guilty of positive negligence, if such a term is admissible —of doing something without care or precaution through which the child suffers injury—the child has prima facie an action

against him.' Bev., Neg. (4th ed.) 232." A child who has reached majority, or a minor who has been emancipated, may sue its parent. *Farrar* v. *Farrar*, 41 *Ga. App.* 120 (152 S. E. 278); *Fowlkes* v. *Ray-O-Vac Co.*, 52 *Ga. App.* 338 (183 S. E. 210). And in *Bulloch* v. *Bulloch*, 45 *Ga. App.* 1, 8, 10 (163 S. E. 708), this court held: "We do not hold that a father could not be held liable for a wilful or malicious wrong, or for some act of cruelty which operated at the same time to forfeit his parental authority. . . It is abhorrent to think that he could not be sued for the 'heinous offense of rape' and all other acts of cruelty, regardless of degree, would seem logically to stand upon the same footing as regards the question of liability." There is nothing in our statute law which would, of itself, prevent a child from receiving redress in the courts where its injury resulted from the wanton misconduct of a parent, nor can it be said that it would add to the peace and tranquillity of the home for such wrongs to go unredressed.

In *Cowgill* v. *Boock*, 189 Ore. 282 (218 Pac. 2d, 445), the court, in a well-considered opinion, held that the administrator of the estate of a minor child might sue the estate of the deceased parent under a wrongful-death statute, both parties having been killed in an automobile accident caused by the wanton negligence of the parent. The court held in part: "There is a trend of modern decisions to depart from the general rule of nonliability where the injury sustained by an unemancipated minor child is the result of a wilful or malicious tort. In 39 Am. Jur., Parent and Child, 736, § 90, it is said: 'However, the rule, despite the long line of authorities supporting it, has been subjected to considerable criticism in some of the more recent decisions, and the tendency seems to be to repudiate or modify it whenever its application is found to be out of line with modern conditions.' In our opinion the rule should not be considered as an absolute one. As stated in the well considered case of *Lusk* v. *Lusk*, 113 W. Va., 17, 19, 166 S. E. 538: '. . we must not exalt this rule above ordinary common sense.' " Rossman, J., concurring specially, further pointed out that, since, as is generally recognized, when a parent lays aside his parental role to enter into business relationships with a minor, the disability ceases and either may sue the other. Applying that principle, his reasoning is: "The

question that confronts us is whether the father was acting in his capacity as a parent when he took the course which brought death to himself, to his son and to his brother. Before solving the problem, let us suppose that a father, while drunk, brutally beats his daughter, or, seizing a gun, shoots her. Should we say that in acting in such a drunken manner he was exercising a parental function, or would it not be more in keeping with the enlightened views of the day to declare that his drunken action was outside the scope of his parental prerogatives. To hold that such drunken action is within the scope of parental authority would outlaw the child and close all courtrooms to her. Surely public policy does not demand such a holding." And in *Meyer v. Ritterbush*, 92 N. Y. Supp. 2nd, the court, while holding that an unemancipated minor child may not maintain an action against a parent for personal injuries caused by simple negligence, gave leave to bring an amended complaint for the purpose of alleging wilful misconduct, and held that the mother's estate might be liable upon a proper showing.

The excerpt from *Bulloch v. Bulloch*, supra, hereinabove quoted, is obiter dictum and as such does not constitute a binding precedent on this court; yet it tends to pave the way for a declaration of the public policy of this State that a parent shall be liable for a wilful or malicious wrong against an unemancipated minor child who is living with such parent and under his custody and control, if the wrong is such an act as would authorize a judgment of a court of competent jurisdiction depriving the parent of parental power over the child. Parental control may be lost by any of the ways enumerated in Code § 74-108, including subsection (3), consent of the father to the child's receiving the proceeds of his own labor, and subsection (6), cruel treatment. The former method is by emancipation (see *Hargrove v. Turner*, 112 *Ga.* 134, 135, 37 S. E. 890) ; and, when so emancipated, the minor child may sue the father for personal injuries sustained in an automobile accident resulting from the father's negligent conduct. *Fowlkes v. Ray-O-Vac Co.*, supra. The facts as alleged in the petition are sufficient to support an indictment against the father for the murder of the child, had it been killed. *Jones v. State*, 185 *Ga.* 68 (194 S. E. 216). In *Turpin v. Brown*, 170 *Ga.* 824 (154 S. E. 356), it was held that an unrea-

sonable beating is such an act of cruelty as to authorize a judgment resulting in the loss of parental control. Questions of custody of minor children usually arise in habeas corpus or custody actions in which the trial court determines the facts. What particular acts are necessary to divest custody and bring about the loss of parental control, however, are questions of fact and not questions of law, and, in an action such as the one here under consideration, the jury and not the court is the proper fact-finding tribunal. It cannot be said as a matter of law that a parent who becomes intoxicated and thereafter risks his life and the lives of the general public by driving over the public roads in that condition and at an excessive rate of speed, and who in addition wilfully and maliciously exposes his child's life and health to the dangers inherent in such conduct, would not be guilty of cruel treatment toward the child such as might operate to forfeit his parental authority. It is not the public policy of this State to preclude an action for damages for personal injury on behalf of an unemancipated minor child against a parent whose acts, resulting in such injury, are so cruel as to authorize the charge of murder had the child been killed, merely because no action has been interposed on behalf of the welfare of such child to bring about the forfeiture of the parental control of such parent. If the jury should find from evidence introduced in support of the allegations of the petition that the acts of the father here were cruel so as to authorize forfeiture of parental control, it would then become proper to consider the extent of the injury and the amount of compensation.

On the other hand, if the conduct of the parent here should be found to be mere negligence, as opposed to an act of cruelty sufficient to sever the parental relationship and evidenced by wanton and malicious misconduct on the part of such parent, then the action is one for negligence only and the action would necessarily fail.

Small v. Morrison, 185 N. C. 577 (118 S. E. 12, 31 A. L. R. 1135), and other cases cited by the defendant have been examined and do not demand a finding contrary to what is here held.

The trial court erred in sustaining the general demurrer as to case No. 33809.

*Judgment affirmed as to case No. 33808. Judgment reversed as to case No. 33809. Gardner, P. J., and Carlisle, J., concur.*