42198.   HARRELL v. GARDNER et al.

ARGUED SEPTEMBER 12, 1966—DECIDED FEBRUARY 9, 1967.

*Fulcher, Fulcher, Hagler, Harper & Reed, Gould B. Hagler,* for appellant.

*Randall Evans, Jr., Ben B. Ross,* for appellees.

PER CURIAM. ■ So far as this record shows the administratrix, the resident defendant, filed no demurrer to the petition. The appellant's demurrer was general "on the ground that it fails to set forth a cause of action against this defendant." Appellant contends that this is true for the reason that, being a nonresident, the court has no jurisdiction over him unless a cause of action is stated against the resident defendant, and that it fails to do so. Appellee contends that the demurrer fails to raise the question of whether a cause of action is set out against the administratrix, for which reason no question is presented for decision. "The absence of jurisdiction, appearing on the face of a petition, may be raised by general demurrer complaining that the petition fails to allege a cause of action for the relief sought." *Mullally v. Mullally,* 199 Ga. 708 (2) (35 SE2d 199); *Modern Homes Const. Co. v. Mack,* 218 Ga. 795, 797 (130 SE2d 725). Where the facts appear upon the face of the petition, "the question raised by the general demurrer was jurisdictional, and it was not necesary for the demurrer to specially set forth that the court was without jurisdic-

tion to entertain the case." *Ruis v. Lothridge,* 149 Ga. 474 (2) (100 SE 635). The demurrer in that case was merely that the petition failed to set out a cause of action. In *Young v. Koger,* 94 Ga. App. 524 (95 SE2d 385) the nonresident defendant filed a general demurrer alleging that the petition failed to set forth a cause of action against him, and this court held that where the demurring defendant was a nonresident, and the resident defendant filed no demurrer, the question was raised, and it would not be error for the trial court to dismiss the petition as to both defendants where as a matter of fact no cause of action was set out against the defendant who failed to demur. However, in *Heath v. Miller,* 197 Ga. 443 (29 SE2d 416), where one defendant filed a general demurrer to the effect that the petition set out no cause of action *against him,* it was held that the demurrer inured to his benefit only, although the state of facts on which the plaintiff had proceeded was the same as to all defendants. This only means, however, that a petition will not be dismissed against a defendant who fails to demur, not that the question of the resident's liability may not be considered, if necessary to adjudicate whether the nonresident may be held in the county in which he is sued. A demurrer in the language of the one here involved was filed by the nonresident defendant in *Richards & Associates v. Studstill,* 212 Ga. 375, 378 (93 SE2d 3), and the Supreme Court, reversing the Court of Appeals, held: "Hence, as to the nonresident defendant Richards & Associates, Inc., the petition alleges no cause of action which, under the venue provision of the Constitution of this State, can be maintained against that defendant in the Superior Court of Dodge County, and its general demurrer should have been sustained." It follows that the demurrer filed in this case is sufficient to raise the jurisdictional question.

■ "Under the statute law of Georgia a wife can not recover of a husband with whom she is living in lawful wedlock, for a tort resulting from his negligent operation of an automobile in which they were riding at the time of the injury." *Heyman v. Heyman,* 19 Ga. App. 634 (92 SE 25). The fact that the husband is dead at the time of the suit is immaterial for the reason that the husband's administrator is subject to suit "just

as the wrongdoer himself would have been during his life. . . ." *Code* § 3-505; *Wrinkle v. Rampley,* 97 Ga. App. 453, 454 (103 SE2d 435).

Since the mother, for whose wrongful death this action is brought, could not if she were living bring a negligence action against her husband, may the children sue the father under *Code Ann.* § 105-1306 for the wrongful death of the mother when the mother's death allegedly resulted from his negligent tort?

The gist of § 105-1306 was "codified from the Acts of 1850 and 1855-6—Cobb's Digest, p. 476; Acts of 1855-6, p. 155. . . ." *Atlanta & W. P. R. Co. v. Venable,* 65 Ga. 55. Neither the original Act nor the current Code section names the persons or classes of persons whom this action for wrongful death can be brought against. It is silent. The question therefore is one of legislative intent, i.e., what did the General Assembly intend in 1850 when it changed the common law and authorized a child, whether emancipated or not, to bring an action for the wrongful death of its mother? Did the General Assembly intend to authorize an action by a child against its father for the wrongful death of its mother, or to authorize this action only against third persons other than the father? We are of the opinion that it intended the latter.

We are aware that some states liberally construe a statute in derogation of the common law. See 82 CJS 942-943, § 393. However, in Georgia this cannot be done; statutes in derogation of the common law are to be strictly construed. See *Hood v. Southern R. Co.,* 169 Ga. 158 (149 SE 898); *Watson v. Thompson,* 185 Ga. 402 (195 SE 190); *Mott v. Central R.,* 70 Ga. 680.

We find one decision in Georgia that appears to be completely analogous. It is *Chastain v. Chastain,* 50 Ga. App. 241 (3) (177 SE 828). There a mother sought to bring an action against the husband and father for wrongful death of an unemancipated child growing out of a negligent tort. *Code Ann.* § 105-1307 authorized a mother to bring an action for wrongful death of her child. By enacting this statute, did the General Assembly intend to authorize an action for wrongful death of her child against the father as well as any other third person? In *Chas-*

*tain* this court held such an action to be against the public policy of this state for the reason that "Had the child not died, no right of action would have arisen in its favor against its father because of the injury. Its death did not give to either of its parents as against the other, nor to its personal representative, a right of action against either parent for the alleged negligent tort. . ."

If the General Assembly did not intend in *Code Ann.* § 105-1307 to authorize a mother to sue the father for the alleged wrongful death of a child, it would seem to follow that the General Assembly consistently did not intend in *Code Ann.* § 105-1306 to authorize a child to sue the father for the alleged wrongful death of the mother.

The recent case in the United States Court of Appeals, 362 F2d 311 (5th Cir.), Union Bank &c. Co. v. First Nat. Bank &c. Co., allowing a similar action, was based primarily upon the point that the deceased parent was covered by liability insurance (alleged in the petition). In *Bulloch v. Bulloch*, 45 Ga. App. 1, 10 (163 SE 708), this court stated: "Something has been said of liability insurance, but the petition shows nothing as to such insurance, and we cannot presume its existence. Moreover, the fact that the defendant father may have carried liability insurance upon his automobile would be irrelevant, since liability must exist before such insurance would be applicable, and a policy of insurance could not establish that fact."

The trial court erred in overruling the demurrer of the non-resident defendant.

*Judgment reversed. Felton, C. J., Bell, P. J., Frankum, P. J., Jordan, Hall, Eberhardt, Pannell and Quillian, JJ., concur. Deen, J., dissents.*

DEEN, Judge, dissenting as to Division 2. If this court was correct in holding with Judge Jenkins in *Farrar v. Farrar*, 41 Ga. App. 120 (152 SE 278), that nothing in the policy of the law inhibits an action by an adult child against a parent for a personal tort grounded on negligence, I am constrained to insist that the second division of the majority opinion is founded on a false premise. The thrust of the decision is that since a wife cannot sue her husband for personal injury during cover-

ture, children cannot sue their parent for the value of her life after the coverture has been ended by homicide. Yet the coverture only prevents the wife from suing while in life and while married to the husband. Similarly, minority prevents a child from suing its parent for simple negligence while unemancipated. One disability ends upon divorce or death, the other upon reaching the age of 21 or on emancipation. *Wright v. Wright,* 85 Ga. App. 721 (70 SE2d 152). And there is no "family unity" doctrine in Georgia which would bar the action of even an unemancipated child against a parent where both parents are in fact dead. Union Bank &c. Co. v. First Nat. Bank &c. Co., 362 F2d 311, supra.

If the children's right of action were derivative from that of a parent the situation would be different, but the right to sue for the wrongful death of a parent, spouse or child is a new, unrelated, and statutory cause of action. *Bloodworth v. Jones,* 191 Ga. 193, 194 (11 SE2d 658); *Western & A. R. Co. v. Michael,* 175 Ga. 1, 13 (165 SE 37); *Thompson v. Watson,* 186 Ga. 396, 405 (197 SE 774, 117 ASR 484); *Nashville &c. R. Co. v. Hubble,* 140 Ga. 368 (78 SE 919, LRA 1915E 1132). "Actions for wrongful death are statutory in origin and repose in the person or persons to whom such right is given by the statute solely by reason of the *survivor's* relationship to the *deceased.*" (Emphasis supplied.) *Burns v. Brickle,* 106 Ga. App. 150 (126 SE2d 633). The relation of the *deceased* to the *defendant* is irrelevant, and equally irrelevant is the fact that the *deceased,* had she lived, could not have brought against the defendant a wholly different cause of action in her own behalf, which, as pointed out in *Hubble,* supra (p. 372), is "so utterly different in origin, in right of recovery, in evidence admissible, and in beneficiaries." As was stated in *Burns,* supra, even the starting point for determining the statute of limitation on suit may well be different. The Supreme Court held in *Happy Valley Farms v. Wilson,* 192 Ga. 830, 836 (16 SE2d 720) that the right of children to recover for the death of a parent is not limited by the fact that the other parent, a co-plaintiff, was guilty of negligence which was a part of the proximate cause of the fatality, and it followed this ruling in *Walden v. Coleman,* 217 Ga. 599

(124 SE2d 265, 95 ALR2d 579) (and incidentally reversed the Court of Appeals which had held to the contrary) with a decision that a widow might sue and recover for the homicide of her husband from the defendant owner of the vehicle, applying the family car doctrine, although the sole cause of the death was the negligence of the plaintiff's daughter, driver of the car and one of the beneficiaries of the action under *Code* § 105-1304. It thus becomes obvious that the mere fact of relationship is not of itself sufficient to deny to any party to the litigation a right which he otherwise has under the law. Each beneficiary has his own right of action which must be determined on the basis of his relationship to the deceased, not on his relationship to some other party or on some other person's relationship to the deceased. The case of *Chastain v. Chastain*, 50 Ga. App. 241 (3) (177 SE 828) cited in the majority opinion in actual fact supports this position. Its holding is clearly and simply that a general demurrer must be sustained to the petition of a wife against her husband based on the death of a 5-year-old child because the wife, being under the disability of coverture, could not sue her husband in her own right and, the child being under the disability of minority, she could not sue in its right. The plaintiffs here, however, are not minors, as must be presumed from the fact that none is suing by guardian or next friend. They are under no disability in an action against their father. They have a statutory right to sue *whomever* the evidence shows to be the party guilty of their mother's death. If the negligence of one of themselves would not bar recovery, why should the coverture of their mother, which ceased with her death and could not by definition exist concurrently with a right of action in them?

While there are cases supporting both views in other jurisdictions, this seems to me most consonant with the present status of Georgia law. It also appears, as stated in 28 ALR2d 662, Anno. to be the recent and better reasoned trend of courts throughout the country. In any event, the *cause* of action can be cut off only if the *right* of action is derivative, and Georgia holds that it is not derivative but is a new statutory substantive right. See also Shiver v. Sessions (Fla.), 80 S.2d 905, which

points out that the common law immunity of the husband stemmed from the disability of the wife to own property; that the husband's act did not thereby cease to be unlawful, but only without remedy as to her because of her personal disability, and that the Wrongful Death Act created "an entirely new cause of action, in an entirely new right, for the recovery of damages suffered by *them* [the plaintiff children,] not the decedent, as a consequence of the invasion of *their* legal right by the tortfeasor." "To extend the tortfeasor's immunity to a new cause of action by the survivors of the deceased wife would apply the immunity rule to a situation never contemplated in its creation and wholly irrelevant to its results." Deposit Guaranty Bank &c. Co. v. Nelson, 212 Miss. 335 (54 S2d 476). To the extent that the death statute may be termed derivative, "its derivation . . . is from the tortious act, and not from the person of the deceased, so that it comes to the parties named in the statute free from personal disabilities arising from the relationship of the injured party and the tortfeasor." Kaczorowski v. Kalkosinski, 321 Pa. 438 (184 A 663, 104 ALR 1267). Indubitably, I find no reason why the fact that the mother would have been without remedy in her own behalf during her lifetime should deprive these plaintiffs of a separate cause of action which arose only upon her death.