**Howard BARNWELL, Jr., a Minor, by next friend, Patricia Barnwell, Plaintiff-Appellant,**

v.

**Sam L. CORDLE, Administrator of the Estate of Howard Barnwell, Sr., Deceased, Defendant-Appellee.**

**No. 29328.**

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1971.

Rehearing Denied April 13, 1971.

A. Cecil Palmour, Cook & Palmour, Summerville, Ga., Morgan & Garner, Chattanooga, Tenn., for plaintiff-appellant.

John T. Minor, III, Minor, McCamy, Phillips & Tuggle, Dalton, Ga., Joseph E. Loggins, Summerville, Ga., James D. Maddox, Matthews, Maddox, Walton & Smith, Rome, Ga., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, WISDOM and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal involves the question of whether the doctrine of parental immunity as articulated by the Georgia courts can be invoked by the estate of a deceased parent to prevent an unemancipated child from recovering damages for injuries sustained in an automobile accident as a result of the deceased parent's negligence. The district court decided that the doctrine could be invoked by the estate and, accordingly, granted the administrator's motion for summary judgment. We reverse and remand.

Howard Barnwell, Jr., the appellant, was seriously injured when the automobile in which he was riding and which was being driven by his father, Dr. Howard Barnwell, Sr., left an Interstate highway near Calhoun, Georgia, in the early morning hours of December 26, 1967, while he, his father, and his sister were returning to Chattanooga, Tennessee, from a visit to Dr. Barnwell's father's farm in Edneyville, North Carolina. Dr. Barnwell died as a result of the accident, and Howard Barnwell, Jr., age 20, was rendered a permanent quadriplegic.[1]

In his two-count complaint, the appellant alleges that his father was guilty of both ordinary negligence and gross negligence and seeks to overcome the bar of parental immunity by alleging the presence of public liability insurance and that the appellant had become an emancipated minor as a result of the accident since it also resulted in the death of his father. The district court granted the administrator's motion to strike the allegations regarding the presence of liability insurance and granted summary judgment on the issue of parental immunity.

The only reported decision applying Georgia law to the precise question here[2] is a 1966 decision of this court, Union Bank & Trust Co. of Mt. Holley, N. J. v. First Nat. Bank, 5 Cir., 1966, 362 F.2d 311, in which the court, speaking through Judge Tuttle in a cogent and scholarly opinion, took note of the recent developments in Georgia dealing with the doctrine of charitable immunity in tort where a policy of liability insuranc is held by the charitable institution,[3] and reasoning by analogy, held:

> We are impelled to conclude that the erosion by the Georgia courts of the charitable exemption doctrine long

---

1. The complaint alleges that

    (6) As a result of the traumatic injuries sustained as a consequence of the accident, the plaintiff has a permanent quadriplegia and other horrible, disabling and painful injuries; all of which has rendered him one hundred percent permanently and totally disabled for the remainder of his life, and the very nature of his injuries and the extent thereof will require plaintiff to be maintained in a controlled environment. Plaintiff has suffered and will continue to suffer for the balance of his life unrelenting pain of an excruciating and grotesque quality, * * *

2. This case, arising in Georgia and brought under the diversity jurisdiction of the federal courts, is clearly controlled by the law of Georgia under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. See, e. g., Morehouse College v. Russell, 219 Ga. 717, 135 S.E.2d 432 (1964); Cox v. DeJarnette, 104 Ga.App. 664, 123 S.E.2d 16 (1961).

made applicable to charitable institutions, forecasts similar action by the State court with respect to the right of a child to sue the estate of its deceased parents where a public liability policy is extant, notwithstanding the continued validity of the nonsuability principle when the facts remain as they were in the *Bulloch* case.

Where, in addition to the existence of a public liability policy, there can be no interference with the family tranquility or unity by reason of a suit against *deceased* parents, we think the Georgia courts would apply the same modifying influence to the no-liability principle in actions of this kind that it has applied in relation to suits against charitable trusts. 362 F.2d at 316.

The court did not reach the question of whether the estate could invoke the immunity without regard for the presence of liability insurance.

While we agree with the result in *Union Bank,* we feel that a cloud was placed on the correctness of its rationale by the recent reaffirmation of dicta from the early, leading case of Bulloch v. Bulloch, 45 Ga.App. 1, 10, 163 S.E. 708 (1931), in Harrell v. Gardner, 115 Ga.App. 171, 175, 154 S.E.2d 265, 268 (1967), where the court said:

The recent case in the United States Court of Appeals, 362 F.2d 311 (5 Cir.), Union Bank & Co. of Mt. Holley v. First Nat. Bank & Trust Co., al-lowing a similar action, was based primarily upon the point that the deceased parent was covered by liability insurance (alleged in the petition). In Bulloch v. Bulloch, 45 Ga.App. 1, 10, 163 S.E. 708, this court stated: "Something has been said of liability insurance, but the petition shows nothing as to such insurance, and we cannot presume its existence. Moreover, the fact that the defendant father may have carried liability insurance upon his automobile would be irrelevant, since liability must exist before such insurance would be applicable, and a policy of insurance could not establish that fact".

In light of this, it is necessary, in reaching our decision, to review the development of the Georgia doctrine of parental immunity and the foundations which support it.

The immunity of parents from liability for torts committed against their children is clearly not absolute in Georgia. In the leading Georgia case of Bulloch v. Bulloch, supra, the court held that an unemancipated minor cannot maintain an action against his father for personal injuries caused by the father's negligence[4] on the principal ground that the maintenance of such an action would be unduly detrimental to the authority and obligations of the parent with respect to his children as expressly provided for in the positive statutory law of Georgia,[5] but also on

---

4. See also Chastain v. Chastain, 50 Ga. App. 241, 177 S.E. 828 (1934).

5. The court relied principally on § 3021 of the Code of 1910, now Code § 74–108, Ga.Code Ann. (1963), which provides:

Parental power.—Until majority, the child shall remain under the control of the father, who is entitled to his services and the proceeds of his labor.

This parental power shall be lost by:

1. Voluntary contract, releasing the right to a third person.

2. Consenting to the adoption of the child by a third person.

3. Failure of the father to provide necessaries for his child, or his abandonment of his family.

4. Consent of father to the child's receiving the proceeds of his own labor, which consent shall be revocable at any time.

5. Consent to the marriage of the child, who thus assumes inconsistent responsibilities.

6. Cruel treatment of the child. Complimenting Code § 74–108 is Code § 74–105, § 3020 of the former Code, which provides:

Father's obligation as to maintenance, etc.—Until majority, it is the duty of the father to provide for the maintenance, protection, and education of his child.

grounds of preventing fraud, harassment and preserving the financial integrity of the family.[6] In doing so, the court strongly suggested that the immunity is limited by the public policy expressed in Georgia statutory law regarding parental authority.

We have referred to section 3021 of the Civil Code which states the conditions upon which the parental authority may be lost, and it may be that in this section is to be found the dividing line between liability and no liability in cases of this kind. In other words, if the father should so violate his obligations as to work a forfeiture of his right of control, as by cruelty or otherwise, and the child sustains injury thereby, may not the child maintain an action against the father for the legal wrong thus committed? It is abhorrent to think that he could not be sued for the "heinous offense of rape," and all other acts of cruelty, regardless of degree, would seem logically to stand upon the same footing as regards the question of liability. 45 Ga.App. at 10, 163 S.E. at 712.

The approach taken in *Bulloch* is consistent with the decision of the preceding year in Farrar v. Farrar, 41 Ga. App. 120, 152 S.E. 278 (1930), which held that there is no immunity running to the parent of an adult child who continues to live in the home of his parents, because "there is no legal obligation resting upon parents to support a child after it reaches its majority, nor is there any legal obligation resting upon a child, after reaching majority, to remain in the home of the parents and perform, in return for the care and attention given by them, the duties usually performed by a child who is unemancipated".

The *dicta* in *Bulloch* to the effect that there is no immunity where the parent commits a wilful or malicious tort against his child and by the same act forfeits his right of parental authority [7] became law in Georgia with the decision in Wright v. Wright, 85 Ga.App. 721, 70 S.E.2d 152 (1952), where an unemancipated minor was allowed to recover damages from her father for personal injuries sustained in an automobile accident caused by his drunkenness. See also, Buttrum v. Buttrum, 98 Ga.App. 226, 105 S.E.2d 510 (1958).

In the case of Stapleton v. Stapleton, 85 Ga.App. 728, 70 S.E.2d 156 (1952), the Georgia Court of Appeals held that an unemancipated child may recover against his parent's employer for injuries sustained by the child due to the negligence of the parent while acting within the service of the employer, although the child could not recover from the parent, relying on such authorities as Chase v. New Haven Waste etc. Corp., 111 Conn. 377, 150 A. 107, 68 A. L.R. 1497; Schubert v. August Schubert Wagon Co., 249 N.Y. 253, 164 N.E. 42, 64 A.L.R. 293; Mi-Lady Cleaners v. Mrs. Daniel, 235 Ala. 469, 179 So. 908; Wright v. Wright, 229 N.C. 503, 543, 50 S.E.2d 540; and 1 Restatement of the Law of Agency, § 217. In thus recognizing a third exception to the doctrine of parental immunity the Court of Appeals clearly indicated that "although the law may deny to the child the right of recovery against the parent, * * *

6. A recent book dealing with the Georgia law on the subject states:

> The rule is founded on the notion that the father is responsible for the family government, the support and maintenance of the child, and that permitting such a suit would impair parental authority.
>
> \* \* \* \* \*
>
> Further, it has been the view that permitting a suit, and recovery, would require the father to hold assets for the benefit of the child alone when such funds might be required for the support of the family generally. R. S. Stubbs II, Georgia Law of Children, § 199, 453–454, (1969).

7. In addition to the language already quoted from *Bulloch* the court also said:

> We do not hold that a father could not be held liable for a willful or malicious wrong, or for some act of cruelty which operated at the same time to forfeit his parental authority. 45 Ga.App. at 8, 163 S.E. at 711.

trespass * * * upon the person of a child does not cease to be an unlawful act, though the law exempts the parent from liability for the damages", and that " 'others may not hide behind the skirts of his [the parent's] immunity'". 85 Ga.App. at 731–732, 70 S.E.2d at 159.

These decisions lead, inescapably, to the conclusion that, under Georgia law, a parent's immunity from tort liability to his children does not survive the parent's death. First of all, it is clear that parental immunity in Georgia is firmly bottomed on the authority of a parent over his child, Bulloch v. Bulloch, supra, and that whenever parental authority is terminated, whether as a result of malicious and wilful conduct by the parent amounting to a forfeiture of that authority, Wright v. Wright, supra; Buttrum v. Buttrum, supra, or by the natural and orderly loss of authority that takes place when the child reaches adulthood, even where the child continues to live in his parents' household, Farrar v. Farrar, supra, parental immunity ends with it. Nothing could be more certain than that a parent's authority over a child, both in the experience of life and in the contemplation of the law, is finally terminated at the parent's death. Code § 74–108, supra, n. 3, implicitly assumes as a necessary premise that the father must be alive to exercise control over his child, and in Code § 74–106, Ga.Code Ann., it is provided that "upon the death of the father, the mother is entitled to the possession of the child until his arrival at such age that his education requires the guardian to take possession of him * * *" Secondly, it is clearly established by *Stapleton,* supra, that the immunity is personal to the parent and may not be relied on by another as a shield to avoid liability. It

would seem that this principle would apply to the administrator of a deceased parent's estate and the employer of a negligent parent with equal vigor. See Parks v. Parks, 390 Pa. 287, 135 A.2d 65 (1957).[8]

This conclusion is buttressed by the national decisional trend of allowing actions in tort by unemancipated minors against their deceased parent's estate, particularly where the child's injuries and the parent's death arise out of the same occurrence. See Davis v. Smith, 3 Cir., 1958, 253 F.2d 286, affirming, E. D.Pa., 1954, 126 F.Supp. 497; Dean v. Smith, 1965, 106 N.H. 314, 211 A.2d 410; Long v. Landy, 35 N.J. 44, 171 A. 2d 1 (1961); Brennecke v. Kilpatrick, Mo.1960, 336 S.W.2d 68 (en banc); Parks v. Parks, supra; Palcsey v. Tepper, 71 N.J.Super. 294, 176 A.2d 818 (1962); Vidmar v. Sigmund, 192 Pa.Super. 355, 162 A.2d 15 (1960); cf. Mahnke v. Moore, 1951, 197 Md. 61, 77 A.2d 923.

Finally, in a recent unreported case, the Superior Court for Oconee County, Georgia, denied a motion to dismiss for failure to state a claim upon which relief could be granted in an action involving the identical issue presented here. The Court of Appeals dismissed the appeal in the absence of a certificate for immediate appeal, Osborne v. Welch, 119 Ga.App. 853, 168 S.E.2d 897 (1969), and *counsel informs us that the case was subsequently settled.* Even so, it does provide some indication, albeit slight, of how a Georgia court would face the instant situation.

The administrator strongly relies on the decision of Harrell v. Gardner, supra, which held that a child could not sue the deceased father for the wrongful

---

8. While holding that an unemancipated child could not sue her living parent in tort the court in *Parks* said:

We have, however, recognized that the doctrine of intrafamily immunity from suit by a member of the family expires upon the death of the person protected and does not extend to a decedent's estate for the reason that death terminates the family relationship and there is no longer a relationship in which the state or public policy has an interest * * * Thus, although there may be immunity from suit between parent and child during life, the immunity does not extend to the personal representative of a deceased parent or child. 135 A.2d at 71.

death of the mother under Code § 105–1306, Ga.Code Ann. (1968), since if the mother had lived she could not have maintained an action against the father. However, the circumstances in *Harrell*, and the other cases in its line,[9] make it inapposite to the present situation since it deals with the construction of the Georgia statute providing a means of recovery for the wrongful death of a mother or wife, and does not directly deal with the right of a child under the common law to recover damages for personal injuries from the estate of his father.

The holding in *Harrell* is predicated on the notion that there is a condition precedent to recovery for wrongful death under Code § 105–1306 that the deceased mother or wife would have been entitled to recover had she lived and, further, that the mother in *Harrell* would have been barred from recovering from her husband or his estate by the disability of coverture. In so reasoning, the court relied on the Georgia Survival Statute, Code § 3–505, Ga.Code Ann.,[10] in taking the position that the death of the husband in no way terminated the disability of coverture. It is important to note, however, that under Georgia law the wife has no right or cause of action for torts committed against her by her husband during coverture and thus has nothing to assert against his estate upon his death. Heyman v. Heyman, 19 Ga. App. 634, 92 S.E. 25 (1917). In the present situation, however, it would seem that a child wrongfully injured by

his parent has a right or cause of action against the parent which is prevented from maturing into a full blown right of recovery by the parent's immunity from liability, since it is well established that a child wrongfully injured by a parent while acting in the course of his employment may recover from the employer, Stapleton v. Stapleton, supra, and that an employer can be liable only if there is a cause of action against his employee from which his liability can be derived. See Roadway Express, Inc. v. McBroom, 61 Ga.App. 223, 6 S.E.2d 460 (1939).

It is thus our view that young Barnwell was possessed of a cause of action against his father which he was prevented from converting into a judgment for howsoever long his father lived because of the doctrine of parental immunity and that upon his father's death the immunity terminated, the limitation placed on the cause of action was lifted, and his father's estate became subject to liability under the Survival Statute.

Finally, the administrator takes the position that even if we hold that an unemancipated child is entitled to recover damages in tort from his parent's estate, as we have done, summary judgment ought to be sustained because young Barnwell was a guest passenger in his father's car and thus was due only a slight duty of care, which, the administrator contends the supporting affidavits and depositions establish he received. See Hopkins v. Sipe, 58 Ga.App. 511, 199 S.E. 246 (1938); Bolton v. Bluestein, 55 Ga.App. 782, 191 S.E. 388

---

9. Walker v. Walker, 122 Ga.App. 545, 178 S.E.2d 46 (1970); Horton v. Brown, 117 Ga.App. 47, 159 S.E.2d 489, cert. den. 117 Ga.App. 879 (1967); Chastain v. Chastain, supra.

10. Code § 3–505 provides:
Action for tort and certain causes of action not to abate by death of either party.—No action for a tort shall abate by the death of either party, where the wrongdoer received any benefit from the tort complained of; nor shall any action, or cause of action, for the recovery of damages for homicide, injury to person, or injury to property abate by the death

of either party; but such cause of action, in case of the death of the plaintiff, shall, in the event there is no right of survivorship in any other person, survive to the personal representative of the deceased plaintiff; and in case of the death of the defendant, shall survive against said defendant's personal representative. However, in the event of the death of the wrongdoer before suit shall have been brought against him, the personal representative of such wrongdoer in such capacity shall be subject to suit just as the wrongdoer himself would have been during his life; providing that there shall be no punitive damages.

(1936). The district court did not pass on this issue; and, furthermore, the determination of a person's status in an automobile necessarily requires the fact finder to make inferences from even undisputed facts, concerning which there are generally genuine issues of material fact. See Harvey v. Great Atlantic and Pacific Tea Co., 5 Cir., 1968, 388 F.2d 123.

The order of the district court granting summary judgment· is hereby reversed and the matter is remanded for further proceedings not inconsistent with this opinion.[11]

Reversed and remanded.

11. On remand the district court should also consider whether diversity jurisdiction is actually present in this case in light of our recent decision in Bass v. Texas Power & Light Company, 5 Cir., 1970, 432 F.2d 763, since both the appellant and his father were citizens of Tennessee and there is nothing in the record to indicate the reasons behind the appointment of the Georgia administrator.