## 33071. HUGHES v. PARHAM.

NICHOLS, Chief Justice.

This case draws into question the constitutionality of Code Ann. § 105-1307 (Ga. L. 1887, pp. 43-45; 1952, p. 54) which provides as follows: "A mother, or, if no mother, a father, may recover for the homicide of a child, minor or sui juris, unless said child shall leave a wife, husband or child. The mother or father shall be entitled to recover the full value of the life of such child. *In suits by the mother the illegitimacy of the child shall be no bar to a recovery.* (Emphasis supplied.) The 1952 amendment inserted the last sentence relating to illegitimate children.

Upon the death of the illegitimate child, the natural father and the maternal grandmother, in her capacity as administratrix of the estate of the deceased child, brought separate wrongful death actions against the appellant. The appellant moved for summary judgment against the natural father, contending that there was no legal theory upon which the natural father could recover.

In denying the appellant's motion for summary judgment, the trial court found that Curtis Parham, the appellee, was the natural father of the deceased child; that the natural mother of the deceased child had been killed in the automobile collision that took the life of the

child; that the child had been born out of wedlock to Curtis Parham, the appellee, and the deceased mother; and that although the appellee never had married the deceased mother, he had executed the child's birth certificate acknowledging paternity of the child, had paid the birth expenses for the child, had regularly supported the child from its birth until its death, had at all times acknowledged the child as his own, and had visited the child daily. The court further found that the Georgia wrongful death statute does not bar a wrongful death action by the mother of an illegitimate child. The trial court concluded as a matter of law that because the wrongful death statute allows a mother to maintain an action for the wrongful death of her illegitimate child but denies that right to the father of an illegitimate child, the statute violates the equal protection and due process clauses of the United States Constitution.

While the trial court's order cited no authority in support of its conclusion that the wrongful death statute is unconstitutional, we assume that it was persuaded by appellee's arguments that the United States Supreme Court's decisions outlawing arbitrary legislative classifications based upon illegitimacy mandated the result. Although a superficial consideration of the policies enunciated in those cases might lead one to the conclusion that the trial court has not erred, a close and detailed examination of the constitutional analysis employed in those decisions yields a different result.

1. With limited exception, the analysis used by the Supreme Court in illegitimacy cases appears to be grounded in equal protection. See Levy v. Louisiana, 391 U. S. 68 (88 SC 1509) (1968); Glona v. American Guarantee &c. Ins. Co., 391 U. S. 73 (88 SC 1515) (1968); Stanley v. Illinois, 405 U. S. 645 (92 SC 1208) (1972); Weber v. Aetna Casualty &c. Co., 406 U. S. 164 (92 SC 1400) (1972); Gomez v. Perez, 409 U. S. 535 (93 SC 872) (1973); New Jersey Welfare Rights Organization v. Cahill, 411 U. S. 619 (93 SC 1700) (1973); Jiminez v. Weinberger, 417 U. S. 628 (94 SC 2496) (1974); Mathews v. Lucas, 427 U. S. 495 (96 SC 2755) (1976); Fiallo v. Bell, 430 U. S. 787 (97 SC 1473) (1977); Trimble v. Gordon, 430 U. S. 762 (97 SC 1459) (1977); and Quilloin v. Walcott, —

U. S. —- (98 SC 549) (1978).

The equal protection test focuses on whether the "ends" to be reached by the governmental classification are legitimate and whether the means employed to achieve those ends are substantially related to them, i. e., whether the exclusion of fathers of illegitimate children from the benefits of a wrongful death action is substantially related to legitimate state interests. The equal protection test is further complicated by the addition of differing standards of scrutiny depending upon the area being examined. Strict scrutiny is utilized for those areas of suspect classifications where discrimination against a particular class has traditionally existed or where paramount constitutional rights are abridged. In contradistinction to this strict scrutiny standard, a less stringent standard is used where economic or business interests are classified by the state.

The means used in the case sub judice is obviously the denial by the General Assembly of an action for wrongful death to the father of an illegitimate child. The ends, however, are not so readily discernible. The state ends might be the interests in promoting a legitimate family unit and in forestalling potential problems of proof of paternity in wrongful death actions. The promotion of this state interest might have been the result of the conclusion of the General Assembly that more often than not the father of an illegitimate child who has elected neither to marry the mother nor to legitimate the child pursuant to proper legal proceedings suffers no real loss from the child's wrongful death. Finally, the General Assembly may have decided that the state's interest in setting a standard of morality was enhanced by refusing to allow a natural father, who has refused to comport with the General Assembly's idea that society needs a legitimate family unit, to share in a statutorily given wrongful death action.

In upholding Social Security law provisions which required illegitimate dependents in certain situations to submit individualized proof of dependency against attacks based upon the equal protection clause, Justice Blackmun held that "Congress is [not] required in this realm of less than strictest scrutiny to weigh the burdens

of administrative inquiry solely in terms of dollars ultimately 'spent,' ignoring the relative amounts devoted to administrative rather than welfare uses. . . While the scrutiny by which their showing is to be judged is not a toothless one [cits.], the burden remains upon the appellees [plaintiffs] to demonstrate the insubstantiality of that relation." Mathews v. Lucas, 427 U. S. at 510. Justice Blackmun's statement illustrates that the standard of scrutiny used when reviewing legislative classifications placed upon illegitimates is somewhat less than "strict scrutiny." Unfortunately, the standard enunciated by Justice Blackmun can only serve as a starting point for deciding which standard of analysis should be employed here. That standard of scrutiny is a direct result of the highest court's concern with the traditional discrimination against the illegitimate child itself. "As we said in Lucas, the constitutionality of this law 'depends upon the character of the discrimination and its relation to legitimate legislative aims. . .' In subsequent decisions, we have expressly considered and rejected the argument that a state may attempt to influence the actions of men and women by imposing sanctions on the children born of their illegitimate relationships." Trimble v. Gordon, 430 U. S. at 769.

Here, the classification has been placed upon the parent of an illegitimate child. We can find no Supreme Court cases which suggest that a stronger than ordinary level of scrutiny should be employed when the object of the classification is the father of an illegitimate child. We do not think that Stanley, supra, and Quilloin, supra, mandate a different conclusion. Those decisions were concerned with the forced loss of parental rights by state proceedings. The Supreme Court's concern in those cases rested not with any traditional discrimination against fathers of illegitimate children, but rather, with the potential state infringement without proper hearing upon the fundamental right of an individual to raise a family.

2. The Georgia wrongful death statute does not violate the equal protection clause of the United States Constitution. All of the four ends proffered by this court as reasons for the legislative classification are legitimate state interests. Applying a normal level of scrutiny to the

legislative classification compels a finding that the means employed to attain those legitimate ends are not unconstitutional in violation of the equal protection clause. "[C]lassifications . . . are not per se unconstitutional; the matter depends upon the character of the discrimination and its relation to legitimate legislative aims." Mathews v. Lucas, 427 U. S. at 504. "[P]resumptions in aid of administrative functions, though they may approximate, rather than precisely mirror, the results that case-by-case adjudication would show, are permissible under the Fifth Amendment, so long as that lack of precise equivalence does not exceed the bounds of substantiality tolerated by the applicable level of scrutiny. . . [T]he burden remains upon the [parties arguing unconstitutionality] to show the insubstantiality of that relation." Id. at 509, 510.

3. This court recognizes that Glona v. American Guarantee &c. Ins. Co., supra, stands as a physical precedent for the propositions proffered by the appellee. That case, however, can be distinguished on its facts. The problems of proving maternity in Glona would be insignificant in comparison to the problems of proving paternity in the usual case. Further, the state has a legitimate interest in encouraging fathers of illegitimate children to legitimate the child by petition or by marrying the mother. This court recognized in Quilloin, supra, that in most circumstances it is the mother, not the father, who raises and cares for the illegitimate child. Moreover, the father of the illegitimate child is usually the parent in this situation who has control over whether a legitimate family unit will exist. Thus, the state interest in promoting the family as an institution for child rearing and in setting standards of morality is arguably furthered by denying the wrongful death action to fathers of illegitimate children, although granting it to mothers.

If the facts as alleged in the father's affidavit and as found by the trial court in this case are true, he has indeed suffered and arguably should be entitled to bring a wrongful death action for the loss of his child. The remedy, however, lies with the General Assembly, not with the judiciary.

The right to bring a wrongful death action did not

exist under common law. It is statutorily given. The Supreme Court of the United States has held many times that it is not unconstitutional for a state legislature to attack a perceived evil only a little at a time. In 1952 the General Assembly did this by adding the portion of Code Ann. § 105-1307 which provides that the illegitimacy of a child shall be no bar to recovery in a suit by the mother. Ga. L. 1952, p. 54. In 1979 the General Assembly could choose to amend the Act to allow the father of an illegitimate child to bring a wrongful death action. The Constitution, however, does not require that this court do so.

4. The trial court also found that the wrongful death action violated the appellee's due process rights. This court concludes to the contrary.

5. For the reasons set out above, the trial court erred in finding Code Ann. § 105-1307 unconstitutional in violation of the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution.

*Judgment reversed. All the Justices concur, except Hill, J., who dissents.*

ARGUED JANUARY 10, 1978 — DECIDED APRIL 4, 1978 — REHEARING DENIED APRIL 19, 1978.

*Burnside, Dye, Miller & Bowen, A. Montague Miller, Thomas W. Tucker,* for appellant.

*Tisinger, Tisinger & Vance, Thomas E. Greer,* for appellee.

HILL, Justice, dissenting.

The majority fails to explain how the state's objective of promoting a legitimate family unit is furthered by denying the father of an illegitimate child an action for that child's wrongful death. The illegitimate child is already dead by the time the means chosen by the state comes into operation. The denial of a claim for a child's wrongful death does not promote the family as an institution for rearing that child in a timely or rational manner regardless of the level of scrutiny employed. The sanction

adopted by the state is not suited and comes too late to motivate a father to provide care for his illegitimate child. It treats the father of an illegitimate child differently from the mother of that same child and thus constitutes a denial of equal protection.

The majority seek to distinguish Glona v. American Guarantee &c. Ins. Co., supra, based on the difference in proving paternity vs. maternity, a ground which was expressly rejected in Trimble v. Gordon, supra, where the court stated that although a state might adopt a more demanding standard of proof for fathers of illegitimate children than for mothers, the extreme means of complete exclusion of recovery was not permissible. Because I cannot accept at face value the tortfeasor's proffered state rationale or a distinction of Glona already rejected by the U. S. Supreme Court, I must respectfully dissent.