## 35368. JONES et al. v. SWETT.

PER CURIAM.

This is an appeal from an order of the trial court sustaining a motion to dismiss appellant's complaint

against the appellee for failure to state a claim.

The appellee Jake Swett shot and killed his wife, the natural mother of the appellants. He was indicted and convicted of murder and his conviction was affirmed by this court. *Swett v. State,* 242 Ga. 228 (248 SE2d 629) (1978). The appellants filed this action under the wrongful death statutes (Code Ann. § 105-1306) seeking damages against the appellee, their stepfather.

In granting the motion to dismiss the trial court relied on the case of *Williams v. Ray,* 146 Ga. App. 333 (246 SE2d 387) (1978) which relied on the earlier cases of *Harrell v. Gardner,* 115 Ga. App. 171 (154 SE2d 265) (1967) and *Horton v. Brown,* 117 Ga. App. 47 (159 SE2d 489) (1967). Appellants contended in the trial court and now on appeal that Code Ann. § 105-1306 as interpreted by the courts "has cut off the right to recovery of a significant number of citizens of this State" and is violative of their constitutional rights under the 6th, 7th and 14th Amendments to the United States Constitution.

The question framed by the Court of Appeals in *Harrell,* supra, was as follows:

"Since the mother, for whose wrongful death this action is brought, could not if she were living bring a negligence action against her husband, may the children sue the father under Code Ann. § 105-1306 for the wrongful death of the mother when the mother's death allegedly resulted from his negligent tort?"

In an 8-1 opinion the court answered this question in the negative, holding that the General Assembly intended "to authorize this action only against persons other than the father." Id. at 174.

In *Horton,* supra, a sharply divided Court of Appeals, held that Code Ann. § 105-1306 does not authorize a child to bring an action for the wrongful death of his mother against the estate of his stepfather, since the mother, had she been in life, would have had no right of action against her husband for injuries received. The court relied on *Harrell,* supra, saying that the *Harrell* "decision was based solely on a determination that the children's right of action for the wrongful death was derivative from their mother." Justice Hall, then on the Court of Appeals, in a special concurrence, questioned that *Harrell* held the

right of action to be derivative but concluded that while the statute "gave a new cause of action, a 'condition precedent' to the action was that the deceased could have sued the defendant, if death had not ensued." Justice Jordan, then on the Court of Appeals, dissented to the opinion in *Horton,* contending that the statute created a new cause of action in favor of the children; was not derivative from the mother; and could be brought "against persons other than the *father.*" He concluded that the action should lie against a stepfather since he would be in the category of a "third person," a stranger to the plaintiffs with no relationship such as would bar the action on the basis of public policy.

It seems clear from a reading of *Harrell* and *Horton* that the rationale in both cases is based on the "family unity" doctrine which disallows suits between members of a family as being contrary to public policy. This was pointed out by Judge Shulman, speaking for the court in *Williams v. Ray,* supra, where he said, "However, a majority of this court, in these cases [*Harrell* and *Horton*] and the cases cited therein, have made the doctrine of interspousal immunity a part of the wrongful death statute." Once the court interprets a statute, that interpretation becomes an integral part of the statute and any subsequent "reinterpretation" would be no different from a judicial alteration of language placed in the statute by the General Assembly itself. *Walker v. Walker,* 122 Ga. App. 545 (178 SE2d 46) (1970); *Williams v. Ray,* supra, p. 334.

As pointed out on several occasions, the General Assembly has not seen fit to modify this doctrine of immunity which was judicially engrafted upon a legislatively created right of action unknown to common law.

This court recently considered a similar constitutional attack on another portion of the wrongful death statutes (Code Ann. § 105-1307) which provide a cause of action to the mother of an illegitimate child to the exclusion of the father. In that case, *Hughes v. Parham,* 241 Ga. 198, 201 (243 SE2d 867) (1978), we said "The Georgia wrongful death statute does not violate the equal protection clause of the United States Constitution . . . The

right to bring a wrongful death action did not exist under common law. It is statutorily given. The Supreme Court of the United States has held many times that it is not unconstitutional for a state legislature to attack a perceived evil only a little at a time . . . [T]he General Assembly could choose to amend the Act . . . The Constitution, however, does not require that this court do so."

Likewise, we find that the due process and equal protection attacks made on Code Ann. § 105-1306 as interpreted by our courts are without merit.

We conclude that the interspousal and intra-family doctrine of immunity which bars tort actions between family members is substantially related to legitimate state interests, i.e., promoting the preservation of the "family unit" for the good of the society in general.

The General Assembly could remedy the situation which exists under the facts of this case by providing that the wrongful death statute does not bar a suit for damages between a child and a stepparent, thus creating that as an exception to the doctrine of intra-family immunity.

*Judgment affirmed. All the Justices concur, except Jordan and Hill, JJ., who dissent.*

SUBMITTED SEPTEMBER 7, 1979 — DECIDED OCTOBER 30, 1979 — REHEARING DENIED NOVEMBER 21, 1979.

*Harold E. Martin,* for appellants.
*George D. Lawrence, Jr.,* for appellee.

JORDAN, Justice, dissenting.

I dissent primarily on the basis of my dissent in *Horton v. Brown,* 117 Ga. App. 47 (159 SE2d 489) (1967). First, in my opinion the wrongful death statutes are intended to create a new cause of action for the recovery of damages suffered by the survivors, and such right of action does not rest upon any rights derivative from their ancestor, the decedent. The Code section (105-1306) clearly provides that the right to bring suit is vested in *"those surviving at the time the action"* is brought. If the right of action was derived solely from the deceased, those

surviving at *the time of the death* of the deceased or their representatives would be entitled to bring the action. Thus, this Code section created a new cause of action in those surviving at the time the action is brought and is not related to or dependent upon whether or not the deceased could have sued the wrongdoer for damages had the decedent lived.

Secondly, this is a suit against a stepfather, as was the situation in *Horton,* supra. The *Harrell* opinion clearly indicated that the intent of the General Assembly was to authorize an action under this statute only against *third persons* other than the father (mother). Since the defendant here, the stepfather, is not the father of the plaintiffs, he can only be a "third person" as contemplated by the language in *Harrell.* He is a blood stranger to the plaintiffs with no relationship sufficient to bar an action against him under the doctrine of intra-family immunity.

"Both this court and the Supreme Court have said that the word 'parent' used in the statutes means the lawful father or mother, and that a child cannot recover for the homicide of his stepfather even though he stood in loco parentis to the child. *Marshall v. Macon &c. Lumber Co.,* 103 Ga. 725 (30 SE 571, 41 LRA 211, 68 ASR 140); *Weems v. Saul,* 52 Ga. App. 470 (183 SE 661). A stepfather is simply not within the circle; is one 'other than a member of the class designated' and as such is subject to suit for the wrongful death of a member of the circle." Dissenting opinion, *Horton v. Brown,* supra, p. 57.

If a child cannot recover for the wrongful death of his stepfather, why should the law protect the stepfather from suit by the child for the wrongful death of his mother?

I respectfully dissent.

I am authorized to state that Justice Hill joins in this dissent.