43069. HORTON et al. v. BROWN et al., Executors.

ARGUED SEPTEMBER 12, 1967—DECIDED NOVEMBER 21, 1967—REHEARING DENIED DECEMBER 20, 1967—CERT. ▪

*Gibbs & Leaphart, Alvin Leaphart,* for appellants.
*Leon A. Wilson, II,* for appellees.

DEEN, Judge. 1. This case is controlled by *Harrell v. Gardner,* 115 Ga. App. 171, 174 (154 SE2d 265), where this court stated the question before it to be as follows: "Since the mother, for whose wrongful death this action is brought, could not if she were living bring a negligence action against her husband, may the children sue the father under *Code Ann.* § 105-1306 for the wrongful death of the mother when the mother's death allegedly resulted from his negligent tort?" The court then (this writer dissenting) answered the question in the negative. That

decision was based solely on a determination that the children's right of action for the wrongful death was derivative from their mother, as shown by the fact that the court held the case completely analogous to *Chastain v. Chastain*, 50 Ga. App. 241 (3) (177 SE 828). The cases are analogous in that in both there was no right existing in the mother to sue the father for a personal tort. In *Chastain*, however, the children were minors who could not sue their father in their own right for a negligent tort, whereas in *Harrell v. Gardner* they were adults who could do so unless barred by the fact that their right of action was derivative from their mother, who was laboring under the disability of coverture during her lifetime. The reasoning in *Harrell* is important to the case at bar, since the plaintiffs are the children of the deceased mother but have no blood relationship to her husband and no personal disability to bring an action against him or his estate. As to an ordinary tort there is no reason why these plaintiffs could not sue the estate of their stepfather for a tort committed by him against them during his lifetime, but equally in *Harrell* there was no bar to a suit by the plaintiffs there, adult children, against the defendant or his estate. Both cases therefore, must be controlled by the decision in *Harrell* holding that the fact that the mother could not have brought suit against her husband during her lifetime will bar an action by her children against him for her death. This was a decision by the whole court which considered and rejected the argument that the statutes involved in *Code Ch.* 105-13 create new causes of action, unknown to the common law. "These statutes of this State adopted and extended Lord Campbell's Act and its successors, and establish liability for wrongful death where none existed before; they are familiar examples of the legislative creation of new rights and duties for the prevention of homicides or for satisfying social and economic needs." *Western & A. R. Co. v. Michael*, 175 Ga. 1, 13 (165 SE 37). However, since a majority of the members of this court is of the opinion that the right, as it appears from the facts of this case and the *Harrell* case, supra, is derivative, it follows that no cause of action is set out by these adult children, suing for the death of their mother due to a wilful tort inflicted by her husband.

*Judgment affirmed. Quillian, J., concurs. Pannell, J., concurs in the judgment only. Hall and Eberhardt, JJ., concur specially. Felton, C. J., Bell, P. J., Jordan, P. J., and Whitman, J., dissent.*

HALL, Judge, concurring specially with judgment of affirmance. I must take exception to the statement made in the above opinion that the full court in *Harrell v. Gardner*, 115 Ga. App. 171 (154 SE2d 265) rejected the argument that the statutes involved in *Code Ch*. 105-13 create new causes of action, unknown to the common law. On the contrary, the court specifically recognized that the child had been given a new cause of action which did not exist at common law. The question was, "when it changed the common law," did it authorize the "action only against third persons other than the father?"

The result in this case is controlled by the following authorities: *Berry v. Northeastern Railroad*, 72 Ga. 137 (1); *Thompson v. Watson*, 186 Ga. 396, 401 (197 SE 774, 117 ALR 484); *Harrell v. Gardner*, 115 Ga. App. 171, supra; *Chastain v. Chastain*, 50 Ga. App. 241 (3) (177 SE 828); *Heyman v. Heyman*, 19 Ga. App. 634 (92 SE 25).

As a matter of public policy, I concede that a strong argument can be made that there is nothing wrong in allowing a child to sue his stepfather for the wrongful death of his mother. However, the law on this question is not simply what the judges of this court think the law *should be,* but what the General Assembly has said it is. In seeking former legislative intent, we cannot look forward to recent trends in other states, we must look back to the intent of our own General Assembly. When making this search, we must look to the law as it stood before the statutes were enacted, the mischief against which they did not provide, the remedy which the legislature provided *at that time,* and the reason for the remedy. At common law and in Georgia prior to the Act of 1850, the mother could sue many persons for the wrongful tort committed against her except that she could not sue her husband. *Heyman v. Heyman*, 19 Ga. App. 634, supra. However, if the tort resulted in her death, then the tort action did not survive against those persons who would have been liable had death not ensued. In 1846, England enacted a

law known as "The Fatal Accidents Act" or "Lord Campbell's Act." This is discussed in an excellent article entitled Actions for Wrongful Death in Georgia, by the late Dean of the Emory Law School, Charles J. Hilkey in 9 Georgia Bar Journal 261, 268, wherein he states that "the English Act, *although tested in the first instant by the right of the deceased to bring the action had he lived,* created in substance a new and original right in certain beneficiaries." Four years subsequent to "Lord Campbell's Act" the Georgia General Assembly enacted a similar provision based upon the English statute. In the 1850 Act, "The distribution in case of insolvency of one-half of the recovery to the wife and children or to the husband, indicates that the act intended to create a new cause of action rather than to provide for survival of that of the deceased with an added element of damage due to death." Hilkey, p. 370. Specific language is found in the Codes of 1861 (§ 2913), p. 543, and 1867 (§ 2920), p. 552, authorizing a suit by the children for the wrongful death of the mother. The identical language of these Codes is also found in the Code of 1873 (§ 2971), p. 511. In an 1880 case involving a suit by children for wrongful death of the mother, the Supreme Court stated that these Acts were "codified from the Acts of 1850 and 1855-6—Cobb's Digest, p. 476; Acts of 1855-6, p. 155. . ." *Atlanta & W. P. R. Co. v. Venable,* 65 Ga. 55. The 1855-6 Act was merely cumulative and did not repeal the Act of 1850. *Southwestern R. Co. v. Paulk,* 24 Ga. 356.

It is now known as *Code Ann.* § 105-1306. In all these Acts, "It is deemed that in cases where the deceased had no cause of action before his death that none should be accorded to his beneficiaries or estate." Hilkey, p. 371. While the Code of 1861 and subsequent Codes do not have language that the action "could be brought where the deceased, if death had not ensued, would be entitled to an action against the wrongdoer. . . The inference from the original requirement would be that in cases where the deceased could not have brought an action, had he lived, no action for wrongful death could be maintained. The general rule in America has been to read this requirement into the statute though not specifically included. [25A CJS 616, § 24; 22 AmJur2d 659, § 80]. The Georgia courts have recognized this

requirement, although the converse is not true that the beneficiaries have an action if the deceased was entitled to an action, since the recovery is not for the benefit of the estate generally but by or on behalf of specified beneficiaries." Hilkey, 9 Ga. Bar J., p. 373. For this statement, Dean Hilkey cites the cases of *Berry v. Northeastern Railroad*, 72 Ga. 137 (1), 138 and *Thompson v. Watson*, 186 Ga. 396, 401 (197 SE 774). The *Berry* case (a full bench decision) held that, "A widow may recover for the homicide of her husband; she will have a right of action whenever the husband, had he lived, would have had such right, and whatever would have been a good defense to his suit, had he lived, will be equally available against one brought by her." In the *Thompson* case (two Justices dissenting), four children brought an action against their sister for the wrongful death of their father. The defendant demurred on two grounds (1) that there was no cause of action in the children against another child of the family for the wrongful death of the father, and (2) if any right there was, it vested in all—not individually. The Supreme Court upheld the demurrer on both grounds. As to the latter ground, the law was amended in 1960 to allow the action to be brought by a smaller number of parties than all. The Supreme Court took the same position as the amendment in *Walden v. Coleman*, 217 Ga. 599 (124 SE2d 265, 95 ALR2d 579) where a wife sued a son-in-law for the wrongful death of the husband. As to the former ground, the Supreme Court said in *Thompson v. Watson*, supra: "Since the original statute of 1850 this court has consistently held that no recovery could be had unless the deceased in his lifetime could have maintained an action for damages for the injury to him, and that any defenses good as against the deceased would be good as against the action brought by the beneficiaries. . . It has been consistently held by this court that the statute is in derogation of the common law and must be strictly construed, and in its present form, as to the damages recoverable, has been said to be in the nature of a penalty against the wrongdoer. *Savannah Electric Co. v. Bell*, 124 Ga. 663 (53 SE 109) ; *Western & Atlantic R. Co. v. Michael*, 175 Ga. 1, 14 (165 SE 37). The statute is harsh in that it gives any right of action at all. Cf. *Smith v. Hatcher*, 102 Ga.

158, 160 (29 SE 162). Thus in construing the statute we must approach it, not with the idea that it is unjust or harsh if it fails to give a right of action in certain instances, but on the contrary that the harshness lies in the fact that it gives a right of action in any instance. This may seem contrary to a humanitarian point of view; but it has always been a rule of construction of statutes that those in derogation of the common law, that is those which give rights not had under the common law, and those penal in nature must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute. The legislature is presumed to act with knowledge of this rule of construction, and *with that body only* lies the right and privilege to grant rights not given under the common law and to extend and broaden any rights so granted. Such is not the function of the courts. The statute in plain terms purports to give a right of action to all of the children of the deceased, minor or sui juris. This to our mind plainly evidences an intent to give a right of action for the homicide of the father *only when death is caused by the tort of one other than a member of the class designated.* Lord Campbell, the author of the first death statute of England from which our present statute evolved, said that his act was passed for the purpose of 'giving a compensation by action to the families of those killed *by the negligence of others.*' 12 Camp. Lives Ld. Ch. 265. . . . [Our statute] evidences an intention to give a right of action to the children for the death of the father only in cases where the death is caused by the tortious act of one other than the children. . . To say that the beneficiaries, by reason of this construction placed upon the statute, may not maintain an action and that none is given in any case where the deceased could not have maintained an action on the tort, is not the equivalent of saying that the beneficiaries could maintain and are given the right to maintain an action in every case where the deceased could have maintained one had he lived. One does not follow from the other; one limits the right of action, the other enlarges it." *Thompson v. Watson,* supra, pp. 401, 405-406, 408. The same principle has been applied to the "avoidance rule", e.g., where the deceased could have avoided the consequences. *Cen-*

*tral of Ga. R. Co. v. Tapley,* 145 Ga. 792 (5) (89 SE 841); *Pressley v. Atlanta & W. P. R. Co.,* 48 Ga. App. 382 (172 SE 731); *Porter v. Southern R. Co.,* 73 Ga. App. 718, 721 (37 SE2d 831). It has been applied to many other defenses which arise at the time of the commission of the wrong. Hilkey, 9 Ga. Bar J., pp. 373-375. As the Supreme Court said in *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665, 666 (88 SE2d 6), this principle "is elementary."

While the Act was amended in 1960 to include dependent illegitimate children and allowed the action to be brought by a smaller number of parties than all entitled to recover, as to whom they can sue the statute remains as silent as the tomb. Its construction in this respect remains the same as stated by our Supreme Court, Lord Campbell and Dean Hilkey—it gives an action to the family of those *killed by those other than the family.* While it gave a new cause of action, a "condition precedent" to the action was that the deceased could have sued the defendant, if death had not ensued. Hilkey, p. 371.

I agree that the Florida case of Shiver v. Sessions, (Fla.) 80 S2d 905, which bases its decision on the recent trend throughout the country of allowing intra-family lawsuits, supports the appellants' contention. However, my position is that the "recent trend throughout the country" cannot affect the legislative intent of the General Assembly which has been consistent for over one hundred years.

The statute gives a cause of action to members of the *family* (husband and/or child or children—emancipated or unemancipated, natural, adopted, and dependent illegitimate of the deceased) to sue all persons *"other than a member of the class designated"* for the wrongful death of the mother or wife. Their rights rise no higher than that of the mother who could not sue her husband.

I am authorized to state that Judge Eberhardt concurs in this special concurrence.

JORDAN, Presiding Judge, dissenting. If this court's decision in *Harrell v. Gardner,* 115 Ga. App. 171, cited in the majority opinion, requires the result reached here then in my opinion it should be re-examined.

This is the first time the appellate courts of this state have been confronted with this exact question. A similar factual situation existed in *Wrinkle v. Rampley,* 97 Ga. App. 453 (103 SE2d 435), but that case turned on the requirement of *Code Ann.* § 105-1306 that all survivors must sue jointly. The 1960 amendment to this Code section modified this requirement so as to allow suit by fewer than all those having a right of action.

If the major premise of *Harrell* is that the plaintiffs in that case could not maintain an action against the father because the mother had no cause of action had she lived, i.e., that the right of the plaintiffs was derived solely from the mother, then in my opinion the reasoning is faulty and the law on this question is correctly expressed in Judge Deen's dissent in that case. As pointed out there the right to sue for wrongful death of a parent, spouse or child is a new, unrelated cause of action given by statute solely by reason of the *survivor's* relationship to the *deceased,* citing *Burns v. Brickle,* 106 Ga. App. 150 (126 SE2d 633); *Bloodworth v. Jones,* 191 Ga. 193, 194 (11 SE2d 658) and other cases. The Wrongful Death Statutes are intended to allow a recovery for damages suffered by the *survivors,* not the decedent, as a result of the wrongful invasion of *their* rights. It seems manifestly clear that the General Assembly did not intend that such cause of action would be derivative from any right the decedent might or might not have, for the statute plainly provides that "those surviving at *the time the action* is brought shall sue." If the right of action derived solely from the deceased, clearly those surviving at the *time of such death* or their representatives would be entitled to bring the action. The statute affirmatively negates the latter. *Code Ann.* § 105-1306.

However, it is my opinion that the rationale of *Harrell* is really based on the "family unity" doctrine which disallows damage suits between members of a family as being contrary to public policy. To fully understand this opinion we must examine the earlier authorities dealing with this subject. Consideration of public policy, together with common law property rights, is the basis for not allowing a wife to sue her husband for a tort during coverture. *Heyman v. Heyman,* 19 Ga. App. 634 (92 SE 25). The same consideration of public policy does

not prevent an *adult* child from suing a parent, since the legal obligation for support, protection, and education no longer exists and such child then occupies the "same status as any other." *Farrar v. Farrar,* 41 Ga. App. 120 (152 SE 278).

Then we come to *Bulloch v. Bulloch,* 45 Ga. App. 1 (163 SE 708), a tort action by an unemancipated child against her father, in which this court held in a well reasoned opinion by Judge Guerry that "whatever may have been the rule at common law, we are satisfied that it would be against the public policy of this State to allow the maintenance of such an action." Pp. 3, 4.

The next case is *Chastain v. Chastain,* 50 Ga. App. 241 (177 SE 828), also written for the court by Judge Guerry, which holds that a wife cannot sue her husband for the negligent death of their five year old son. The only two Georgia cases relied on in *Chastain* are *Heyman* and *Bulloch,* supra, both based on considerations of public policy, the court further adopting the language in a Mississippi case to the effect that "the peace of society, and of families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society" forbid such an action. *Chastain v. Chastain,* 50 Ga. App. 241, supra, Hn. 2.

This brings us up to *Harrell* which was an action by adult children against their father's estate for the wrongful death of their mother allegedly caused by the negligence of the deceased father. We there held that such an action would not lie, based on the "completely analogous" case of *Chastain,* reasoning that if the General Assembly did not intend to authorize a mother to sue the father for the wrongful death of their child (*Chastain*), then it "consistently did not intend in *Code Ann.* § 105-1306 to authorize a child to sue the father for the alleged wrongful death of the mother," (p. 175) at the same time noting that *Chastain* "held such an action to be against the public policy of this state."

This review of these cases leads me to the conclusion, as stated above, that the holding in *Harrell* is primarily based on considerations of public policy, relying on *Chastain,* which in turn cited and relied on *Bulloch* and *Heyman.*

If this is the bedrock of these cases, then the present action should lie since no consideration of public policy is involved.

Here the plaintiffs, not related to the deceased stepfather, able in their own right to maintain an action against the defendant or his estate, are under no disability whatsoever, because of public policy or otherwise, and should be entitled to maintain this action against the defendant's estate for the alleged homicide of their mother by the stepfather.

The only result of *Harrell* then, was to eliminate the *father* or his estate as a defendant in an action by a *child* for the wrongful death of the *mother,* for the reasons stated above. We framed the question in *Harrell* (p. 174) as follows: "Did the General Assembly intend to authorize an action by a child against its father for the wrongful death of its mother, or to authorize this action only against *third persons other than the father?* We are of the opinion that it intended the latter." (Emphasis supplied.)

By our answer we eliminated the *father* as a defendant, at the same time holding that such actions would be authorized "against third persons other than the father." Since the defendant's decedent here is not the father, he can only be a "third person," as contemplated by the above language. Being such a third person and a stranger to the plaintiffs, with no relationship such as would bar the action on the basis of public policy, the defendant's estate should be subject to suit for the wrongful death of the mother of the plaintiffs.

The Florida Supreme Court, in a case involving the identical factual situation we have here, concluded that the wife's disability to sue her husband should not bar a suit by the wife's surviving children against the estate of the husband and stepfather. Shiver v. Sessions, (Fla.) 80 S2d 905. This very logical opinion reviews the authorities on this subject and cites 28 ALR2d 662 at page 666 where it is stated "It appears to be the recent and well-reasoned trend of the courts to allow recovery against a husband or his estate, in an action by or for the benefit of children for damages sustained by reason of the unlawful killing of their mother."

As stated by the Pennsylvania Supreme Court in Rodney v. Staman, 371 Pa. 1 (89 A2d 313), cited in the Shiver case, supra, "Unquestionably, a wrong has been done relatives of the wife

who fall within the purview of the Act. No good reason exists why a late relationship between the deceased and the tortfeasor should bar the damaged third persons from recovery."

Judge Hall's special concurrence relies heavily on language from Dean Hilkey's treatise to the effect that, in cases where the deceased had no cause of action before his death, none should survive to his beneficiary or his estate. But one of the clearest and most logical conclusions reached by the Dean in his article is on page 371 of 9 Ga. Bar J., where he states: "Viewed then from both the historical point of view and apparent meaning of the statutes, it would seem that the *intent* of the legislature *was to create a new cause of action rather than to provide for the survival of that of the deceased.*"

The special concurrence concludes by purporting to draw a circle around all the members of a family as a class, allowing a suit for the wrongful death of one of these members only against someone outside the circle (class). Both this court and the Supreme Court have said that the word "parent" used in the statutes means the lawful father or mother, and that a child cannot recover for the homicide of his stepfather even though he stood in loco parentis to the child. *Marshall v. Macon &c. Lumber Co.,* 103 Ga. 725 (30 SE 571, 41 LRA 211, 68 ASR 140); *Weems v. Saul,* 52 Ga. App. 470 (183 SE 661). A stepfather is simply not within the circle; is one "other than a member of the class designated" and as such is subject to suit for the wrongful death of a member of the circle.

The judgment of the trial court sustaining the general demurrer should be reversed.

I am authorized to state that Chief Judge Felton, Presiding Judge Bell, and Judge Whitman concur in this dissent.