70701, 70702. CLABOUGH v. RACHWAL; and vice versa.
(335 SE2d 648)

BEASLEY, Judge.

On May 4, 1983 the adult deceased in this wrongful death action went to the home of her mother, defendant Rachwal, complaining of a headache. Decedent lay down, and during the course of the evening her mother gave her various prescription and non-prescription drugs to take. Decedent died that evening, having aspirated, due to the effects of high levels of drugs in her system.

Plaintiff Hamlet, defendant's daughter and decedent's sister, filed the present action as guardian ad litem of decedent's son, alleging defendant was negligent in failing to exercise ordinary care, in giving medicines to decedent without first determining the amount of medicines decedent had already taken, in failing to check on decedent's condition after determining that she was unable to care for herself, and in giving prescription and non-prescription drugs to decedent in quantities exceeding those prescribed and recommended. The complaint also alleged that defendant was negligent per se in giving drugs to decedent that were prescribed for defendant's own use. It did not assert any wanton and wilful misconduct on the part of defen-

dant.

Defendant moved for summary judgment contending that the action is barred by the doctrine of family immunity since decedent's son has lived with and continues to live with defendant, who is now his legal guardian, since his mother's death. Plaintiff countered that the doctrine of family immunity has no application here because decedent's son was not a resident of defendant's household when his right of action accrued at decedent's death.

The trial court agreed. However, it granted summary judgment to defendant concluding that "under comparative negligence and the doctrine of assumption of the risk, decedent's fault equalled or exceeded the fault of the Defendant." Thus, the trial court reasoned, since plaintiff "stand[s] in the shoes of the decedent," the action is barred.

Plaintiff appeals asserting that questions of fact remain regarding defendant's negligence and negligence on the part of decedent. Defendant appeals the trial court's rejection of her assertion that the action is barred by the doctrine of family immunity. We take up the latter first.

It has long been held that an unemancipated child has no civil remedy against a parent or person standing in loco parentis for injuries resulting from simple negligence because to allow such an action would violate public policy. *Bulloch v. Bulloch*, 45 Ga. App. 1 (163 SE 708) (1931); *Chastain v. Chastain*, 50 Ga. App. 241 (177 SE 828) (1934); *Eschen v. Roney*, 127 Ga. App. 719, 720 (194 SE2d 589) (1972); *Maddox v. Queen*, 150 Ga. App. 408 (257 SE2d 918) (1979). The rationale behind this doctrine of family immunity is explained in *Eschen*, supra, 127 Ga. App. at 724: "[It] implements a public policy protecting family unity, domestic serenity, and parental discipline." The public policy of this state "is to keep the families intact, and this policy frowns upon proceedings which tend to disrupt the family tranquillity." *Stapleton v. Stapleton*, 85 Ga. App. 728, 729 (70 SE2d 156) (1952). The *Eschen* decision enumerates the following policy reasons which support the doctrine: "(1) disturbance of domestic tranquility, (2) danger of fraud and collusion, (3) depletion of the family exchequer, (4) the possibility of inheritance, by the parent, of the amount recovered in damages by the child, and (5) interference with parental care, discipline and control." *Eschen*, supra, 127 Ga. App. 724. "However," as the court points out, "domestic tranquility and the discipline and control of the family's children are the policy reasons most frequently offered." Id.

The preservation of the family unit is of such utmost importance in this state that it has recently been given stature in our state constitution: "To . . . promote the interest and happiness of the citizen and *of the family*, . . . we the people of Georgia . . . do ordain and estab-

214

lish this Constitution." (Emphasis supplied.) 1983 Ga. Const., Pre-amble.

To allow decedent's son to bring the present suit would be against the public policy of this state. This youngster has lived with defendant since his mother's death, and defendant is now his legal guardian. As defendant "has assumed the status and obligations of a parent without a formal adoption," she stands "in loco parentis." 67A CJS 548, Parent & Child, § 153. In that capacity she may not then be sued by the unemancipated child or the guardian ad litem suing on his behalf. *Maddox*, supra. The question is whether this applies when the defendant's special status did not arise until after the occurrence complained of.

We are not persuaded that the doctrine of family immunity does not attach here simply because plaintiff was only a temporary house guest of defendant at the time of the alleged acts of negligence and while he was still under his mother's guardianship. Plaintiff and de-fendant now have an ongoing "familial" relationship. Their family tranquility and continued harmony is threatened by the present suit wherein one is being sued by the other who is not only under the same roof, but is there by the willingness of the other. As the court in *Coleman v. Coleman*, 157 Ga. App. 533, 534 (278 SE2d 114) (1981), concluded, "[A]lthough the basic family situation has been altered, . . . [t]here is accordingly a continued need for respect and the au-thority to discipline [due to a continuing parent-child relationship]." To allow otherwise would make the law a party to the creation of a climate of family dissension and disunity, for who would voluntarily continue to devote care, concern, and financial support to a family member who seeks legal damages against the provider? The law should not foster disintegration of the family in its traditional role as a support system by denying immunity in the circumstances here present.

The conclusion we now reach is similar to that in *Nelson v. Spalding County*, 249 Ga. 334, 337-338 (3) (a) (290 SE2d 915) (1982). In *Nelson*, after the alleged negligence but before plaintiff filed suit against defendant, she and defendant were married. The Supreme Court upheld the grant of summary judgment to defendant holding plaintiff's cause of action was barred by the doctrine of interspousal immunity. Thus, the court in determining whether defendant was im-mune from suit, did not find controlling the status of the "relation-ship" at the time the cause of action accrued, but rather looked to the status of the relationship at the filing of suit and thereafter. We do so here because we perceive that the rationale is the same.

Nor are we persuaded by the argument that to conclude immu-nity exists under these circumstances would allow other persons to shield themselves from liability by obtaining guardianship over poten-

tial minor plaintiffs. We do not foresee that the application of family immunity will serve as an excuse for negligence by family members towards each other or that persons will seek "in loco parentis" status to avoid threat of civil action. If this occurs, the plaintiff will have the opportunity to uncover this, and the court may conclude that public policy providing immunity would not be served in those cases.

While we acknowledge that there is "a nation-wide trend towards abolition of the parental [family] immunity doctrine . . . the Court of Appeals of Georgia does not indulge in 'judicial legislation' . . . Where there is an established legal doctrine such as this . . . 'under the public policy of this State, as expressed in the public laws' and it has been consistently followed for thirty years [now well over 40 years], we regard any change as being a matter for the legislature." *Eschen*, supra, 127 Ga. App. at 722-23. "The General Assembly has had many opportunities to eliminate this common law doctrine of immunity which was judicially engrafted onto a legislatively created right of action unknown at common law. We must assume that its failure to do so is a matter of considered choice." *Williams v. Ray*, 146 Ga. App. 333, 334 (2) (246 SE2d 387) (1978).

The trial court incorrectly concluded that defendant was not immune from suit under the doctrine of family immunity and erred in denying summary judgment to defendant on that ground. However, because the court on the merits, which we do not reach, granted defendant summary judgment, the proper result materialized and the judgment is affirmed.

*Judgment affirmed in appeal No. 70701. Plaintiff's cross-appeal, No. 70702, is dismissed as moot. Deen, P. J., and Pope, J., concur. Deen, P. J., concurs specially.*

DEEN, Presiding Judge, concurring specially.

It seems to be the parry and thrust of the three opinions in *Horton v. Brown*, 117 Ga. App. 47 (159 SE2d 489) (1967) to draw circles around family members, or at least "purporting to draw a circle around all the members of a family as a class, allowing a suit for the wrongful death of one of these members only against someone outside the circle (class)." Id. at 57. Other efforts have been made to draw "the circle of the other's kin," *Central R. &c. Co. v. Roberts*, 91 Ga. 513, 517 (18 SE 315); *Wheat v. Fraker*, 107 Ga. App. 318, 319 (130 SE2d 251) (1963), perhaps adding a gloss to the lyrical query of "will the circle be unbroken?" One problem may be the lack of a precise equation for the circumference of such a circle, but some illustration is possible.

A.                                    B.                    C.

A review and summary of the case law shows that:

1. No one in A may sue another member of A for a negligent tort. See generally *Eschen v. Roney*, 127 Ga. App. 719 (194 SE2d 589) (1972); *Harrell v. Gardner*, 115 Ga. App. 171 (154 SE2d 265) (1967). However, unemancipated children in A can sue parents or persons in *loco parentis* for wilful torts. *Wright v. Wright*, 85 Ga. App. 721 (70 SE2d 152) (1952). Also, where the mother of the unemancipated child is the agent of a third party, and whose negligence, attributable to the third party, causes the injury to the child, a cause of action by the child against the third party is not prohibited. *Stapleton v. Stapleton*, 85 Ga. App. 728 (70 SE2d 156) (1952). Everyone in A can sue everyone in B or C.

2. Emancipated children in C can sue anyone in A or B for their own personal injury, but not for a derivative cause of action where the original injured person (from whose injury the emancipated child's

---

[1] See *McAuley v. Wills*, 251 Ga. 3 (303 SE2d 258) (1983), as to rights of those conceived potential persons, but yet unborn.

[2] The family circle, however, does not include a group of unrelated individuals of either sex living together in one household, i.e., a so-called lifestyle family. *Village of Belle Terre v. Boraas*, 416 U. S. 1 (94 SC 1536, 39 LE2d 797) (1974), and see *Maddox v. Queen*, 150 Ga. App. 408, 415 (257 SE2d 918) (1979), as this appears to be violative of public policy.

cause of action is derived) may not sue the tortfeasor because both are members of A. *Harrell v. Gardner*, supra.

In the instant case, the defendant grandmother, as the appointed legal guardian of the plaintiff unemancipated grandchild, was clearly in *loco parentis*. This action was in negligence. Accordingly, I completely agree with the majority that public policy prohibits this cause of action.

DECIDED SEPTEMBER 11, 1985 —
REHEARING DENIED SEPTEMBER 26, 1985 —

*Alan B. Waln*, for appellant.
*Thomas S. Carlock*, for appellee.