A90A1731. NEWSOME et al. v. DEPARTMENT OF HUMAN
RESOURCES et al.
(405 SE2d 61)

SOGNIER, Chief Judge.

Jackie Newsome and James Ricks, the natural parents of Remono L. "Rusty" Ricks and Jennifer Nichole Ricks, minors, brought suit against the Georgia Department of Human Resources ("DHR") and its then Commissioner, James G. Ledbetter; several Emanuel County Department of Family & Children's Services ("DFCS") employees, including Iris M. Leonard and Billy K. Scott; and Roy Lee Habersham and Sandra Habersham, seeking damages for the wrongful death of their son Rusty and injury to their daughter Jennifer Nichole, as a result of a fire at the home of the Habershams, foster parents with whom the children had been placed. The action was filed in Fulton County, where it is undisputed Ledbetter resided. Ledbetter was subsequently voluntarily dismissed from the action by the plaintiffs. The Fulton County court then granted the remaining defendants' motion to transfer venue to Emanuel County. All the defendants then moved for and were granted summary judgment in Emanuel County, and Newsome and Ricks appeal.

1. Appellants contend the Fulton County court erred by transferring the action to Emanuel County. Appellants argue that venue was proper in Fulton County because they sought to hold DHR jointly and severally liable for the actions of its employees on the theory of

respondeat superior, that venue against DHR lies in Fulton County, and thus the action may be maintained in Fulton County against the appellees as joint tortfeasors under Ga. Const. of 1983, Art. VI, Sec. II, Par. IV. We do not agree.

Venue in actions against DHR is set by OCGA § 31-2-5 "in the appropriate county." We have found no cases, and the parties have cited none, construing the phrase "appropriate county." That language first appeared in OCGA § 31-2-5 at the time of the adoption of the Michie Code as a revision of the predecessor statute, Ga. Code Ann. § 88-118, which placed venue for actions against DHR "in the county in which the cause of action originates." Given that Ga. Code Ann. § 88-118 was never amended, and that OCGA § 1-1-2 provides that the adoption of the new Michie Code was intended only as a recodification and modernization of the old Code, and its enactment was not intended to alter the substantive law then in existence, we hold that the phrase "appropriate county" in OCGA § 31-2-5 means "the county in which the cause of action originated," as provided in former Code Ann. § 88-118. Accordingly, this cause of action having originated in Emanuel County, the Fulton County court did not err by transferring the action to Emanuel County.[1]

2. Venue in Emanuel County having been proper, we next address appellants' contention that the grounds on which the Emanuel County trial court granted summary judgment to all defendants were erroneous.

(a) Appellants allege summary judgment was improperly granted in the Habershams' favor based on parental immunity. The doctrine of parental immunity (a form of family immunity) is based on the public policy of keeping families intact and discouraging proceedings which tend to disrupt family tranquility, and shields a parent or one standing in loco parentis from suit by an unemancipated minor. *Clabough v. Rachwal*, 176 Ga. App. 212, 213 (335 SE2d 648) (1985). The doctrine was first held to apply to foster parents in *Brown v. Phillips*, 178 Ga. App. 316-317 (1) (342 SE2d 786) (1986). In *Brown*, we held that although foster parents are not the source of their foster children's financial support, it is their responsibility, "in their role as foster parents selected and approved by DFCS, to discharge the duties of the parental relationship by receiving [foster children] into their home and caring for [them] as if [they] had been their own child. [Cit.]" Id. Accordingly, since *Brown*, foster parents have been clothed with parental immunity identical to that afforded natural parents, and are entitled to assert it as a defense to any action

---

[1] The issue not having been raised, we intimate nothing concerning a constitutional basis for this statutory venue.

brought against them by their foster children for torts allegedly committed by them during the period during which they stood in loco parentis. We would agree that it should be applied here, as in *Brown*, but for the fact that after the fire appellants' children were removed from the Habershams' home and placed with another foster family, and thus the Habershams did not stand in loco parentis to the children at the time this action was filed.

Even accepting the special concurrence's analogy of the situation in the case at bar to that of an emancipated child, reliance on cases decided long before the Supreme Court's holding in *Nelson v. Spalding County*, 249 Ga. 334, 337-338 (3) (a) (290 SE2d 915) (1982) misses the mark. "In *Fowlkes v. Ray-O-Vac Co.*, 52 Ga. App. 338, 340 (183 SE 210) [(1935)], this court held that 'an action is maintainable, if the child was emancipated at the time of the tort and the action.' The Supreme Court, however, declined to follow this narrow view in [*Nelson*, supra], concluding that the interspousal immunity doctrine was applicable where, after the collision giving rise to the cause of action, the plaintiff married the defendant. Thereafter, this court held that in determining whether a defendant is immune from suit, we will not find controlling the status of the 'relationship' at the time the cause of action accrued, rather we will look 'to the status of the relationship at the filing of suit *and thereafter*.' (Emphasis supplied.) [Cits.] Clearly under the precedent established by this authority, the [status of the parties] at the time of the accident was not controlling." *Arnold v. Arnold*, 189 Ga. App. 101, 103-104 (375 SE2d 225) (1988). In *Arnold*, the *Nelson* test was applied in a case of first impression in which an unemancipated minor brought suit against a sibling. The defendant sibling was unemancipated at the time the asserted cause of action arose, but had attained majority before trial commenced. We determined that under those circumstances, applying *Nelson*, the defendant was not entitled to immunity as she was by law an adult. The Supreme Court affirmed our decision in *Arnold* with full knowledge of the manner in which *Nelson* had been applied and thus the characterization of that affirmance in the special concurrence is misleading. See also *Trust Co. Bank v. Thornton*, 186 Ga. App. 706, 709-710 (368 SE2d 158) (1988); *Morris v. Brooks*, 186 Ga. App. 177 (366 SE2d 777) (1988); *Clabough*, supra at 214. In *Morris* and *Clabough* the *Nelson* test was used in application of the parental immunity doctrine. Even conceding the merit of appellees' argument that the *Morris* case has no precedential value because only two judges of this court concurred fully, *Clabough* is fully precedential, and thus we conclude that application of the doctrine of parental immunity is controlled by the status of the relationship of the parties at the time the

action is filed.[2]

We see no reason to refuse to apply the time of filing test when the relationship at issue is that of foster parents and children rather than natural parents and children. Rather, we find that application of this test is completely in accord with the reasoning originally stated in *Brown* for clothing foster parents with parental immunity. When a parenting relationship exists, even on an impermanent basis, allowing suit against the parent on behalf of the child violates the public policy of this state favoring the preservation of family tranquility and affording to foster children an environment which resembles, as much as is possible, a natural family. If the foster parent-child relationship no longer exists between the parties, however, concern for the quality and stability of that relationship necessarily abates, thus canceling the reason behind the grant of immunity.

The logic behind the withdrawal of immunity when the condition motivating its creation ceases is analogous to the reasoning in *Martin v. Ga. Dept. of Public Safety*, 257 Ga. 300, 301 (357 SE2d 569) (1987), for the waiver of sovereign immunity when the provision of liability insurance obviates concern about damaging the public fisc. Here, as in *Martin*, "[o]ur duty is to honor that articulation of public policy," id., and remove the shield of immunity when the reason for its original extension no longer exists. It is in accord as well with the Supreme Court's reasoning in *Harris v. Harris*, 252 Ga. 387, 388 (2) (313 SE2d 88) (1984). In holding that the doctrine of interspousal immunity would not be applied to bar suit where the parties, although not divorced, had been separated for many years, the Supreme Court pointed out that "there was, realistically speaking, no 'marital harmony' to be protected by application of the interspousal immunity rule. Nor is there in the record any hint of collusion between the Harrises or of intent to defraud an insurance company. Under these peculiar facts we merely hold, consistent with the principles reviewed in *Robeson [v. Intl. Indem. Co.*, 248 Ga. 306 (282 SE2d 896) (1981) (setting forth the 'traditional policy reasons favoring retention of the common-law immunity rule')], that *the reasons for the immunity rule simply do not exist here*, and that the doctrine of interspousal tort immunity does not apply to bar [this] claim." (Emphasis supplied.) *Harris*, supra. *Stanfield v. Stanfield*, 187 Ga. App. 722 (371 SE2d 265) (1988), cited in the special concurrence, is an aberration unless construed simply as a holding that, unlike the situation in *Harris*, supra, the evidence in *Stanfield* was not sufficient to show that the reasons for immunity no longer existed.

---

[2] Although it is unclear from our opinion in *Brown*, supra, whether the foster parent relationship existed at the time that action was filed, it is clear that this issue was not raised in that case and thus was not addressed.

Thus, while appreciating that there are certainly some arguments to be made in favor of continuing indefinitely the grant of immunity to foster parents, these arguments are no stronger than those made against eliminating the waiver in other immunity situations, and consequently we cannot agree with the trial court that foster parents should be made the lone exception to a hitherto exceptionless rule. Accordingly, we hold that as the foster parent relationship no longer exists between the parties in this case, the trial court erroneously granted summary judgment to the Habershams on the basis that they were shielded by parental immunity.

(b) Appellants assert the Emanuel County trial court erroneously granted summary judgment to the DFCS employees, Scott and Leonard, and DHR (hereinafter referred to collectively as "the state appellees"), on the ground that both the DFCS employees and DHR were entitled, respectively, to official and sovereign immunity. Contrary to the state appellees' arguments in their briefs, this contention is controlled favorably to appellants by *Martin*, supra, and *Price v. Dept. of Transp.*, 257 Ga. 535 (361 SE2d 146) (1987). The comprehensive general liability insurance provided under the Liability Trust Fund of the State of Georgia was held in *Martin* and *Price* to waive both official and sovereign immunity. We cannot accept the state appellees' argument that sovereign immunity remains intact as to DHR itself because the fund does not insure the agency, as that argument was addressed and rejected in *Price*, supra at 537. The trial court erred by granting summary judgment to the state appellees on this basis.

3. Because a grant of summary judgment must be affirmed, however, if it is right for any reason, see generally *Cleveland v. Williamson*, 194 Ga. App. 476, 477 (2) (391 SE2d 22) (1990), we must address the causation and foreseeability issues raised below as alternate grounds on which the trial court might properly have granted summary judgment.

The record reveals that DFCS obtained custody of appellants' children in the summer of 1987. After a brief unsuccessful placement with a paternal relative and a determination by caseworkers that placement with the maternal relatives suggested by Newsome would be unsuitable, DFCS placed the children with the Habersham family. At the time of the placement the Habershams had been participating in the foster care program for over nine years and had cared for at least 11 different foster children of all ages. No foster children had ever been injured while in their care. Sandra Habersham is a licensed practical nurse and works the night shift at a nursing home, while Roy Lee Habersham is at work during the day. In accordance with DHR policy, because both parents are employed, special approval was needed and was given for this family to participate in the foster care

program. Martha Smallwood, a DHR Social Services Coordinator, testified by deposition that she approved the placement, and that under the plan submitted either Sandra Habersham's adult daughter, Sabrina Cooper, or Ms. Habersham's mother was to care for the children when she was unavailable, particularly while she was resting in the morning after she had returned from work and given appellants' children their breakfast.

Sandra Habersham testified by deposition that on the day before the fire, she had picked up three small penny boxes of matches at a bank and placed them in her purse, intending to give them to patients at the nursing home that night. That afternoon another daughter, who lived in a mobile home on the Habersham lot, used one box of matches to burn trash. At work that evening Ms. Habersham gave the second box of matches to a patient, but the third box was still in her pocketbook when she came home from work, and Ms. Habersham believed they were the only matches in the house. She testified by deposition that she believed she had left her purse in her bedroom.

She deposed that, as was her custom, after she fed Rusty and Nichole, she put them to bed for a nap in their bedroom and then lay down herself in her room across the hall. Cooper was sleeping in the room she shared with her infant son and her new husband. Ms. Habersham was awakened by the smoke alarm and rushed across the hall to find the bedroom occupied by the children engulfed in flames. She and her son-in-law managed to carry four year old Nichole outdoors, but could not reach two year old Rusty, who was still in his bed. They and several neighbors attempted to put out the fire, and by the time the fire department arrived and carried Rusty out, it was too late to save him. Bobby Cato, a fire scene investigator with the State Fire Marshal's office who conducted an investigation of the scene on the day of the fire, testified by deposition that he found two burned wooden matches on the floor near the bunk bed identified by Ms. Habersham as the one slept in by Nichole. In Cato's opinion, they were the cause of the fire. Both Scott and Leonard averred in their affidavits that neither appellant had ever reported to them that Nichole liked to play with matches or was fascinated by fire, and there is no suggestion in the record that either child had any such history.

"Children of tender years and youthful persons generally are entitled to care proportioned to their ability to foresee and avoid perils that they may encounter. [Cit.]" *Harris v. Hardman*, 133 Ga. App. 941, 943 (5) (212 SE2d 883) (1975). "If the evidence was such that the custodian of a minor child should have foreseen that the child might be in danger, and the custodian knew of the danger, the custodian was negligent in not taking measures to protect the child, [and] her negligence was the proximate cause of the injuries. [Cits.]" Id. at 942 (3). Nonetheless, in *Salter v. Roan*, 161 Ga. App. 227 (291 SE2d 46)

(1982) and *Garner v. Salter*, 168 Ga. App. 520 (309 SE2d 638) (1983), another decision against the same defendant arising out of the same incident, we reversed the denial of a father's motion for directed verdict and affirmed the subsequent grant of summary judgment to him, respectively, where the evidence indicated that the father emptied the contents of his pockets, including his lighter, on a kitchen counter and went into another room, and without the father's knowledge or direction his five year old son picked up the lighter and set a fire, causing damage. There was no evidence that the child "had any proclivity or propensity for playing with lighters or matches or for setting fires." *Roan*, supra at 228. "These circumstances do not establish parental negligence. 'Where a parent has no special reason to anticipate that a child, either through known dangerous proclivities or because of its possession of dangerous instrumentalities, may inflict harm on the person or property of others, mere failure to supervise the child's play activities is not a failure to exercise ordinary care on the part of the parent so as to subject him to liability[.] . . . (Cits.)' [Cit.] Since [the parent] had no reason to anticipate that his son would take the lighter and start a fire, he had no duty to guard against it. [Cit.]" Id.

Given this court's holdings in *Roan* and *Garner*, supra, we agree with the trial court's conclusion that in the case at bar it was not "reasonably foreseeable in the light of the evidence that the 4-year-old Nichole, with no history as to a liking to play with matches, would obtain a small box of matches from Sandra Habersham's handbag and would set the house afire. The fact that Sandra Habersham was not in the room at the time was not the proximate cause of the incident. Even less was it foreseeable to DHR or . . . Leonard or . . . Scott that placement of the children with these foster parents (who in a period of 9-½ years as foster parents had nothing like this to occur) that such would happen." Accordingly, summary judgment in favor of the Habershams and Scott and Leonard was proper on this ground. *Garner*, supra.

Even assuming, without deciding, the existence of an agency relationship between the Habershams and DHR, no independent ground for DHR's liability is shown, and because summary judgment was proper in favor of the Habershams there is no basis for vicarious liability on the part of DHR, Scott, or Leonard. "If the [Habershams] were not liable for [Rusty's] death [or Nichole's injuries], there can be no liability on the part of those who placed [the children] with the [Habershams], or who were responsible for supervising the foster care after placement. [Cits.]" *LDS Social Svcs. v. Richins*, 191 Ga. App. 695, 698 (2) (382 SE2d 607) (1989). Accordingly, we affirm the trial court's grant of summary judgment to all appellees.

*Judgment affirmed. McMurray, P. J., Banke, P. J., Birdsong, P. J., Cooper and Andrews, JJ., concur. Carley, Pope and Beasley,*

*JJ., concur specially.*

CARLEY, Judge, concurring specially.

I concur in Divisions 1 and 3 and in the affirmance of the grant of summary judgment in favor of appellee-defendants. I cannot, however, concur in Division 2 because, in my opinion, the reasoning employed by the majority therein is erroneous.

If a familial relationship exists at the time that suit is filed, the doctrine of family tort immunity applies even though no familial relationship had existed at the time that the cause of action arose. See *Nelson v. Spalding County*, 249 Ga. 334, 337 (3a) (290 SE2d 915) (1982) (spousal tort immunity applies in post-marriage negligence suit for pre-marriage tort). The majority apparently assumes that the converse must necessarily be true and that, if a familial relationship no longer exists at the time that suit is filed, the doctrine of family tort immunity does not apply even though a familial relationship had existed at the time that the cause of action arose. In my opinion, this assumption is erroneous. See *Stanfield v. Stanfield*, 187 Ga. App. 722 (371 SE2d 265) (1988) (spousal tort immunity applies in post-divorce suit for pre-divorce tort); *Wallach v. Wallach*, 94 Ga. App. 576 (95 SE2d 750) (1956) (spousal tort immunity applies in post-divorce suit for pre-divorce tort).

It is clear that a parental relationship warranting application of family tort immunity existed at the time that appellant-plaintiff's alleged cause of action against appellees arose. *Brown v. Phillips*, 178 Ga. App. 316 (1) (342 SE2d 786) (1986). Accordingly, the issue that I perceive to be presented for resolution in the instant case is whether, as is true in the case of subsequently divorcing spouses, the doctrine of family tort immunity nevertheless applies notwithstanding the subsequent severance of the parental relationship.

The instant case is most nearly analogous to that wherein a subsequently emancipated child brings a negligence suit against his parent for the alleged commission of a pre-emancipation tort. "[A]n action is maintainable, if the child was emancipated *at the time of the tort and the action.* [Cits.]" (Emphasis supplied.) *Fowlkes v. Ray-O-Vac Co.*, 52 Ga. App. 338, 340 (4) (183 SE 210) (1935). If, however, the child was unemancipated at the time of the tort, his subsequent emancipation will not authorize him to initiate a negligence suit against his parent. "An emancipated child cannot maintain an action against his parent for a tort committed before emancipation if at the time of the wrong the action was not maintainable." 59 AmJur2d, Parent & Child, § 145.

There is no controlling or persuasive authority to the contrary. *Nelson v. Spalding County*, supra, merely holds that the existence of a familial relationship at the time that suit is filed warrants applica-

tion of the doctrine of family tort immunity. That case does not purport to overrule *Stanfield v. Stanfield*, supra; *Wallach v. Wallach*, supra, and *Fowlkes v. Ray-O-Vac*, supra. Nor does *Nelson* hold that the subsequent severance of a familial relationship renders the doctrine of family tort immunity inapplicable. *Arnold v. Arnold*, 189 Ga. App. 101 (375 SE2d 225) (1988) was affirmed by the Supreme Court, but only on the limited basis that the doctrine of family tort immunity is otherwise inapplicable in an action between siblings. *Arnold v. Arnold*, 259 Ga. 150 (377 SE2d 856) (1989). *Morris v. Brooks*, 186 Ga. App. 177 (366 SE2d 777) (1988) is a two-judge case and has no precedential value.

In my opinion, there is no reason to depart from, and every reason to adhere to, the rule that the doctrine of family tort immunity which bars a child from maintaining a negligence action against his parent is not obviated by subsequent emancipation *or* severance of the parental relationship. The recognized rationale for the doctrine of family tort immunity is that it " 'implements a public policy protecting family unity, domestic serenity, and parental discipline.' [Cit.]" *Eschen v. Roney*, 127 Ga. App. 719, 724 (194 SE2d 589) (1972). Division 2 of the majority opinion certainly does *not* implement that public policy. One presumably chooses to become a foster parent so as to provide a home for a child who is in need of family unity, domestic serenity and parental discipline. Few, if any, citizens of this state will elect to become foster parents if the effect of that election is to invite a potential plaintiff to live in one's home. Even those few who may be willing to take the risk will not be entirely free to act as parents to their foster children, but must comport themselves so as to avoid becoming defendants in a future negligence lawsuit. Moreover, if the bar of family tort immunity is lifted by the subsequent severance of the foster parent relationship, it would also be lifted by the subsequent emancipation of a natural child. The inchoate right of a presently unemancipated natural child to maintain a post-emancipation negligence suit against his parents can only have a deleterious rather than beneficial effect upon family unity, domestic serenity and parental discipline. An unemancipated foster or natural child is not barred from suing his foster or natural parent for a *willful or malicious* tort such as would authorize a severance of the parental relationship. *Wright v. Wright*, 85 Ga. App. 721 (2) (70 SE2d 152) (1952). However, the majority's conclusion that a subsequently emancipated foster or natural child is not barred from suing his foster or natural parent for alleged pre-emancipation simple negligence is, in my opinion, inconsistent with the underlying rationale for the doctrine of family tort immunity. Accordingly, I would base the affirmance of the trial court's grant of summary judgment in favor of appellees upon the additional ground that appellant-plaintiff's suit is barred by the doc-

trine of family tort immunity.

I am authorized to state that Judge Pope joins in this special concurrence.

BEASLEY, Judge, concurring specially.

I concur as to Division 2, see *Hennessy Cadillac v. Pippin*, 197 Ga. App. 448 (398 SE2d 725) (1990).

DECIDED FEBRUARY 25, 1991 —
REHEARING DENIED MARCH 29, 1991 —

*William L. Salter, Jr., Charles W. Cook*, for appellants.

*Jones, Cork & Miller, Thomas C. Alexander, Thomas W. Joyce, Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Jennifer L. Hackemeyer, Assistant Attorney General*, for appellees.