A93A1217. QUEEN et al. v. CAREY.
(435 SE2d 264)

BEASLEY, Presiding Judge.

Plaintiffs appeal from a defendant's verdict in a negligence action for the wrongful death of plaintiffs' 19-month-old son Jason. The boy died as the result of injuries sustained when the defendant, the child's step-grandfather, whom he called "Papa," ran over him as he was moving the truck in his yard. Defendant was a used car dealer working out of his home and it was not unusual for him to use his yard to demonstrate a vehicle to a customer. Sometimes during such demonstrations, Jason and his older brother were in the yard.

The two boys along with their mother and her boyfriend were

residing in defendant's father's house, which was adjacent to defendant's residence and which was being rented for them by defendant and his wife, the boys' maternal grandmother. Plaintiffs had separated following Jason's birth, and from that time until the incident, he along with his brother were cared for and supported almost exclusively by defendant and his wife. The defendant father made no direct contributions for the children's support. Counting the period of her pregnancy, the mother once received $35, and it was from the paternal grandmother on the father's behalf.

Shortly after the child's death, the mother and the surviving son moved into a government-subsidized apartment, where they were fed and clothed through government assistance. They were residing there when the father filed the present action, two months after the fatality. They lived in the apartment for only a brief period and then moved into defendant's home, where they were still living at the time of trial. The father failed to provide support for the surviving son. At trial, the surviving son referred to defendant as "Papa." The mother opined that defendant had not been driving the truck "recklessly" and agreed that defendant "was driving like anybody else would as far as pulling the truck forward."

The trial defense was two-fold: defendant denied any negligence on his part; defendant asserted that the father had abandoned the deceased child and that at the time of the child's death, he (the defendant) was in loco parentis, thereby barring an action against him for the child's negligent wrongful death.[1]

1. Plaintiff parents contend that the trial court erred in allowing, over their continuing objection, evidence of the defendant's support and the father's lack of support of the deceased child at times other than when the action was filed and thereafter, and in charging the jury that it could consider such evidence in determining whether or not defendant was in loco parentis to the child. It was error, they maintain, because as stated in *Newsome v. Dept. of Human Resources*, 199 Ga. App. 419, 421 (2) (a) (405 SE2d 61) (1991) "application of the doctrine of parental immunity is controlled by the status of the relationship of the parties at the time the action is filed," and at the time suit was filed, defendant was not providing any support to the plaintiffs or to the surviving brother.

First, there could be no evidence of support of the child at the time of filing. The child was dead.

Second, appellants misapply *Newsome*. To understand why, it is necessary to examine the policy considerations behind intrafamilial

---

[1] Although the complaint alleged defendant's gross negligence, the case was tried as one for ordinary negligence.

tort immunity and to apply them here.

Under the original rule of *Fowlkes v. Ray-O-Vac Co.*, 52 Ga. App. 338 (183 SE 210) (1935), in the context of child emancipation, "an action is maintainable, if the child was emancipated at the time of the tort and the action." Id. at 340. Thus, the circumstances were examined as of the time the cause of action accrued.

"It has long been held that an unemancipated child has no civil remedy against a parent or person standing in loco parentis for injuries resulting from simple negligence because to allow such an action would violate public policy." *Clabough v. Rachwal*, 176 Ga. App. 212, 213 (335 SE2d 648) (1985). The policy reasons behind the rule are to prevent " '(1) disturbance of domestic tranquility, (2) danger of fraud and collusion, (3) depletion of the family exchequer, (4) the possibility of inheritance, by the parent, of the amount recovered in damages by the child, and (5) interference with parental care, discipline, and control.' [Cit.]" Id. at 213 citing *Eschen v. Roney*, 127 Ga. App. 719, 724 (194 SE2d 589) (1972). In *Clabough*, plaintiff filed the action as guardian ad litem of the decedent's son. After the cause of action accrued, decedent's son moved into defendant's house, and was living there when the complaint was filed. This Court held that in that situation public policy would best be served by "looking to the status of the relationship at the time of filing and thereafter." Had the Court relied on the status at the time of accrual of the cause of action, it would have had to find that defendant was not in loco parentis to the plaintiff child, which finding would have ill-served the important policy considerations behind the doctrine.

The Supreme Court had earlier reached a similar result in *Nelson v. Spalding County*, 249 Ga. 337 (290 SE2d 915) (1982), in which plaintiff married defendant after plaintiff's cause of action against defendant accrued but before the complaint was filed. The court held that plaintiff's cause of action was barred by interspousal immunity because of the parties' status at the time of the claim. Id. at 337 (3) (a). As in *Clabough*, examination of the parties' status as of the claim resulted in its being barred.

In *Arnold v. Arnold*, 189 Ga. App. 101 (375 SE2d 225) (1988), aff'd, 259 Ga. 150 (337 SE2d 856) (1989), defendant was a minor at the time of accrual of the cause of action and at the time the complaint was filed, but was emancipated at the time the trial court granted her summary judgment on the ground of family immunity. This Court citing *Nelson* held that inasmuch as defendant was emancipated at the time of the granting of summary judgment, the policy reasons for immunity were not present and therefore the granting of judgment on that basis was in error. This Court in the later case of *Morris v. Brooks*, 186 Ga. App. 177 (366 SE2d 777) (1988) (physical precedent but later cited in *Mohorn v. Ross*, 205 Ga. App. 443 (422

SE2d 290) (1992)), extracted from *Clabough* and *Nelson* the principle that "where there is a change of status in the relationship between the parties in the interval between the tortious act and the filing of the action, the time of filing governs." *Morris* at 179. Thus, it follows that if the status of the parties does *not* change, the time of filing need not be determinative.

In *Hennessy Cadillac v. Pippin*, 197 Ga. App. 448 (398 SE2d 725) (1990), this Court held that *Clabough* and *Nelson* required the court to look to " 'the status of the relationship at the filing of the suit and thereafter' and not to the time of the tort." *Hennessy Cadillac* at 449. This was necessary because of the ongoing parent-child relationship of the plaintiffs with the sought third-party defendant.

The majority holding in *Newsome*, relied on by appellants, was tailored to the particular circumstances of the case. The rule was applied to ensure that the relationship between the defendant foster parents and the surviving child had not changed between the time of the tortious injury and the time of the claim. Family immunity is to preserve family tranquility, but if the familial relationship no longer exists at the time the claim is filed or thereafter, see *Hennessy Cadillac*, supra, "concern for the quality and stability of that relationship necessarily abates, thus canceling the reason behind the grant of immunity." *Newsome* at 422 (2) (a).

While the objectives of immunity may "become relevant after an action is filed, not at the time a cause of action accrues," *Mohorn* at 443, consideration of evidence that would shed light on the familial relationship at issue is not isolated to only the time of filing suit. Often, as in the case at bar, in order to understand the family dynamics which would compel or abrogate immunity, it is necessary for the fact finder to view a broad span of evidence, stretching from the time of injury to the claim and thereafter. See statement of facts, supra. A continuum, and not a static point (snapshop) must be viewed. As in *Mohorn*, supra, an examination of the relationship only at the time the claim is filed is not sufficient in order to determine whether or not "there remains the possibility of salvaging the family unit." Id.

Here, the jury properly was allowed to consider all evidence relevant to the defendant's claim of being in loco parentis and in instructing the jury to consider evidence of the doctrine in defense. Even if evidence of the remaining familial relationship had been restricted to the time of filing suit and thereafter, such isolated evidence would still have authorized the jury to find defendant in loco parentis so as to invoke the protection of parental immunity.

2. Plaintiffs further contend that the trial court erred in charging the jury that the father's recovery for the wrongful death of the minor child could be lost if the jury found he had failed to contribute to the support of the child. They maintain that the charge was based on

*Solomon v. Sapp*, 169 Ga. App. 267 (312 SE2d 166) (1983) which "involved a contest between parents as to the proceeds of a wrongful death case" and that the trial court "had already ruled that such an action [was] post judgment pursuant to O.C.G.A. § [19-7-1 (c) (6)]."

Contrary to appellants' contention, the instruction is not a statement of law from the Court of Appeals' ruling in *Solomon* but is rather taken from the Supreme Court's holding after granting certiorari in the case, *Sapp v. Solomon*, 252 Ga. 532 (314 SE2d 878) (1984).[2]

Furthermore, it is a correct statement of the law. See *Solomon v. Sapp*, 171 Ga. App. 147 (320 SE2d 636) (1984). The fact that the court in an order earlier entered in the case may have stated that the issue was one of post-judgment concern rather than a defense, did not preclude the instruction or render it a less than accurate statement of the law.

Moreover, the charge clearly addresses only the question of *the right to participate* in any recovery and does not instruct that financial abandonment by the father, in and of itself, is a defense to any liability on the part of the defendant.

While the charge may have been gratuitous at that juncture of the case, it was not harmful error in the context of the court's total instruction.

3. Lastly, plaintiffs contend that the trial court erred in failing to give requests to charge the jury as to the duty of landowners, in general, and in particular to minor children when on their premises as invitees.

The instruction sought by plaintiffs cast the deceased child as an invitee on defendant's property. Such a characterization would have been wholly inaccurate under the undisputed facts. At the time of the tragedy, the child was part of defendant's household.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED AUGUST 16, 1993.

*B. Andrew Prince*, for appellants.
*Crim & Bassler, Harry W. Bassler, Carey, Deal, Jarrard & Walker, Jack M. Carey*, for appellee.

---

[2] The defendant's request to charge in this regard also incorrectly cited the Court of Appeals case.