## A11A0507. DONEGAN et al. v. DAVIS.

(714 SE2d 49)

ADAMS, Judge.

Plaintiff/appellant James Donegan, as next friend of his son, Michael "Buddy" Donegan, brought suit against the child's mother, appellee Dorothy DeAnn Davis, and others seeking to recover damages for injuries Buddy suffered when the vehicle in which he was riding, which was being driven by Davis, collided with another vehicle. Additionally, Donegan asserted individual claims for medical expenses and loss of Buddy's services. The trial court granted Davis's motion for summary judgment, finding that the claims on behalf of the minor child, an unemancipated minor, were barred by the public policy doctrine of parental or family immunity and also dismissed the remainder of the claims with prejudice. Donegan appeals.

> 1. It is well established in Georgia that an unemancipated minor may not sue a parent for injury arising from a negligent act. *Clabough v. Rachwal*, 176 Ga. App. 212, 213 (335 SE2d 648) (1985); *Coleman v. Coleman*, 157 Ga. App. 533 (278 SE2d 114) (1981). Public policy reasons which support the parental or family immunity include: (1) disturbance of domestic tranquility, (2) danger of fraud and collusion, (3) depletion of the family exchequer, (4) the possibility of inheritance, by the parent, of the amount recovered in damages by the child, and (5) interference with parental care, discipline and control. *Clabough*, supra.

*Blake v. Blake*, 235 Ga. App. 38, 39 (508 SE2d 443) (1998). However, it is also true that

> "[w]hile, under the public policy of this State, an unemancipated minor child has no cause of action against a parent for simple negligence, such child may maintain an action for personal injury against a parent for a wilful or malicious act, provided it is such an act of cruelty as to authorize forfeiture of parental authority." *Wright v. Wright*, 85 Ga. App. 721 (2) (70 SE2d 152) [(1952)].

*Buttrum v. Buttrum*, 98 Ga. App. 226 (105 SE2d 510) (1958).

As is pertinent to these issues, the record shows that Donegan is the biological father of Buddy and that he legitimated his son. At the time of the collision, Donegan, Davis and Buddy lived together. It appears undisputed that Donegan no longer lives with Buddy and Davis and that Davis is now Buddy's primary caretaker and means of support.

The record further shows that the accident in which the child was injured occurred when Davis collided with the vehicle in front of her, when that vehicle slowed in response to a collision between two other vehicles. The collision caused extensive damage to the vehicles and Buddy was ejected from the vehicle. The child suffered serious injuries as a result of the accident, and was air lifted from the scene to the hospital.

After an officer at the scene smelled a strong odor of an alcoholic beverage coming from Davis's breath and noticed that her eyes were glossy and her speech was slurred, a blood alcohol test was performed on Davis, which revealed a blood alcohol content of 0.1999 grams, and Davis subsequently pled guilty to DUI. Davis also paid a fine for "child seat belt viol[ation]." Additionally, Donegan points to the fact that the medical records attached to his response to Davis's motion for summary judgment indicate that Buddy was in his car seat at the time of the accident, but "the seat was not restrained to the car."

Pointing to these facts — that the evidence indicates Davis was extremely intoxicated and she lacked the capacity to properly attach the car seat to the car, Donegan argues that Davis's conduct constituted a wilful and malicious act amounting to an act of cruelty sufficient to sever the parental relationship, and thus the trial court erred by granting summary judgment on the basis that Buddy's claims were barred by the doctrine of family immunity.[1]

First, we note that the evidence Donegan points to in support of his contention that the car seat was improperly attached to the car is contained in Buddy's medical records and is obviously hearsay without probative value since the medical officials completing the

---

[1] Donegan also points to the fact that Davis had previously entered a guilty plea to drug charges, and points to the fact that the medical records indicate Buddy suffered withdrawal symptoms during his hospital stay after the accident. But the drug offense occurred in 2002, Buddy was born in 2004, the accident here occurred in 2006 and there is nothing to suggest that Buddy suffered withdrawal symptoms at the time of his birth or that he had illegal drugs in his system at the time he was admitted to the hospital for treatment of his injuries. Rather, the records indicate that Buddy experienced withdrawal symptoms from the pain killers he was administered while he was being treated for his injuries, and was being evaluated for "posttraumatic" seizures. Likewise, although Donegan points to various notations in the medical records in an attempt to paint a picture of deprivation existing before the accident, those same records indicate that the past medical history was "negative" and that Buddy was a "previously healthy child."

reports would have no knowledge of why the child was thrown from the vehicle except statements made to them by others, who were not identified in the reports.[2] Such hearsay, "[e]ven when admitted without demur . . . has no probative value. . . ." *Dennis v. Adcock*, 138 Ga. App. 425, 428 (2) (226 SE2d 292) (1976). And although Davis was charged and pled guilty to a child seatbelt violation, the specifics of that charge do not appear in the record. Moreover, charges of DUI child endangerment were dismissed against Davis, and it does not appear that Davis was speeding. Lastly, although Donegan interjected irrelevant evidence concerning a prior drug offense, which occurred years before the accident here, one of the incident reports indicated that the accident was not drug related. Thus, although we clearly do not condone Davis's conduct of driving under the influence, we do not believe that the facts, taken as a whole, show that Davis committed a malicious or wilful act of such cruelty so as to authorize forfeiture of parental authority. Given that it appears undisputed that Davis is Buddy's primary custodian and caregiver, many of the policy reasons underlying the bar of parental immunity are extant here, and thus we agree that Buddy's claims are barred by the doctrine of parental immunity based on these public policy considerations.

2. For the reasons stated in Davis's brief on appeal, we also find the trial court properly dismissed Donegan's claims for loss of services of the child, who was under the age of three at the time of the accident, and medical bills. See *Atlanta Consolidated Street R. Co. v. Arnold*, 100 Ga. 566, 567 (28 SE 224) (1897); OCGA § 19-7-1.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED JULY 1, 2011.

*Bryan C. Brunson, Brian K. Panessa*, for appellants.
*Kristin L. Hall*, for appellee.

---

[2] The unreliability of the nonmedical information contained in the medical reports is demonstrated by the fact that the records indicate that the child "was in a high-velocity impact from behind" when in fact the vehicle in which he was riding was not struck from behind, but struck the vehicle in front of it. Equally revealing as to the unreliability of the nonmedical information contained in the reports is the notation that the father "apparently" had custody even before the accident when in fact the undisputed evidence shows the mother, father and child were living together at the time of the accident. Indeed, Donegan had not pointed us to anything in the record to show that he ever had sole custody of the child.